**Deborah L. WRIGHT–SWYGERT, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 4, 2011.

Decided March 3, 2011.

---

Robert L. Simmons, Philadelphia, for petitioner.

Maribeth Wilt–Seibert, Assistant Counsel and Gerard Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Deborah L. Wright–Swygert (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) affirming the decision of the Referee denying her unemployment compensation benefits because she voluntarily terminated her employment without cause of a necessitous and compelling nature pursuant to Section 402(b) of the Un-

employment Compensation Law (Law).[1] For the reasons that follow, we reverse the Board's decision.

Claimant was employed by Independence Blue Cross (Employer) as a full-time Lead Business Systems Analyst from February 4, 1974, through her last day on October 30, 2009. She voluntarily terminated her employment when Employer offered and Claimant accepted a voluntary early retirement package (VERP). Claimant filed for unemployment compensation benefits with the Office of UC Benefits which denied her claim finding that she did not have knowledge that her job would be affected if she did not accept Employer's plan to voluntarily terminate employment; Claimant accepted a voluntary separation from her Employer; Employer's standard retirement plan was still in place if Claimant declined the VERP; and continuing work was still available. Claimant filed an appeal requesting a hearing before a Referee alleging that 530 associates were released due to downsizing and restructuring by Employer.

At the hearing, Employer did not appear. Claimant, without counsel, testified that she had worked full-time for Employer since 1974 and was earning an annual salary of $83,000. She explained that she was made aware by Employer that the company was going through a restructuring and downsizing, she was offered a VERP, and was given 45 days to consider whether to take the offer.[2] Claimant testified that she was not going to accept the offer because she felt like she was too young to retire and she enjoyed her job.

Two weeks before the deadline to accept the VERP, her Director called her into his office to find out if she would accept the VERP. She told him she was not going to accept the offer because she felt like her job was secure. The Director told her the company would still be laying off a large amount of people even after the VERP program ended. The Director stated that the senior director asked him to talk to her to tell her to consider taking the package. When Claimant asked him if her job was in jeopardy, he said their division was going through a big shakeup and reorganization and he was not sure about his own job or her job. A week later, the Director again called her into his office to find out whether she was going to take the package. She said that the Director did not tell her directly, but "in general" that her job was going to be eliminated. (February 3, 2010 Hearing Transcript at 5.) At that time, she felt pressured to accept the VERP because management was not supposed to talk to employees or coerce them about what they were going to do. "It was like they were telling me that my job was going to be eliminated." (February 3, 2010 Hearing Transcript at 5.) She stated that the Director provided her with the name of his

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937), 2897, *as amended*, 43 P.S. § 802(b). That section provides:
   An employe shall be ineligible for compensation for any week—
      (b) In which his unemployment is due to *voluntarily leaving work without cause of a necessitous and compelling nature* irrespective of whether or not such work is in "employment" as defined in this act.

2. Claimant also testified that as part of the VERP, she was given the American Recovery and Reinvestment Act (ARRA) Subsidy Application for medical benefits, but that to be eligible for benefits, she had to have an *involuntary termination* from employment. However, Claimant also testified that the ARRA was not an incentive offered by Employer, i.e., that she was not forced to accept the ARRA subsidy offered by Employer, but that she was merely eligible for that benefit. Also, COBRA was also offered to her by Employer, just at a higher rate. (Reproduced Record at 20.)

financial person with whom she could speak.

■ The Referee denied Claimant benefits because she was not specifically told that she would be laid-off but only that the Director made a general statement that all members of the division would be affected by a shake-up and there was uncertainty about their jobs. Claimant was not told specifically that her job would be eliminated, but she felt uncertain and did not want to lose her medical benefits. Because Claimant "did not present any first hand testimony or evidence which would indicate that her fears about her employment with the employer would materialize or that there were impending threats to her job," (Referee's February 4, 2010 decision at 2), the Referee determined that Claimant did not establish that she had a necessitous and compelling reason to quit her employment. Claimant appealed the Referee's decision to the Board, which affirmed after denying Claimant's request for reconsideration, and this appeal by Claimant followed.[3]

Claimant, now represented by counsel, contends that there was not substantial evidence to support the Board's decision because: 1) Employer was downsizing its business and many employees were being offered a VERP; 2) she was offered the VERP and pressured by the Director to take the package, to the extent that he offered her the name of his financial advisor; and 3) no continuing work was shown to be available.

In determining whether a necessitous and compelling cause exists in the context of corporate downsizing, this Court in *Renda v. Unemployment Compensation Board of Review*, 837 A.2d 685 (Pa. Cmwlth.2003), held that the relevant inquiry is whether "the circumstances surrounding a claimant's voluntary quit indicated a likelihood that fear about the employee's employment would materialize, that serious impending threats to her job would be realized, and that her belief her job is imminently threatened is well-founded." *Id.*, 837 A.2d at 692. Citing *Staub v. Unemployment Compensation Board of Review*, 673 A.2d 434, 437 (Pa. Cmwlth.1996), we went on to state:

"[S]peculation pertaining to an employer's financial condition and future layoffs, however disconcerting, does not establish the requisite necessitous and compelling cause." *Staub*, 673 A.2d at 437.[4]

---

3. Our scope of review of the Board's decision is limited to determining whether an error of law was committed, constitutional rights were violated or findings of fact were supported by substantial evidence. *Frazier v. Unemployment Compensation Board of Review*, 833 A.2d 1181 (Pa.Cmwlth.2003).

4. We stated in *Renda:*

[T]his court denied benefits where a claimant's speculative concerns over future employment prompted her voluntary termination. *Mansberg [McCarthy] v. UCBR*, 829 A.2d 1266 (Pa.Cmwlth.2003) (claimant voluntarily quit despite employer's statement that lost jobs would be "filtered" to other sections of company); *PECO Energy Co. v. UCBR*, 682 A.2d 49 (Pa.Cmwlth.1996)

(claimant accepted early retirement package based on "postulations" of "what he felt could happen"); *Staub* (claimant accepted early retirement incentive based on his belief that employer's "poor financial condition" would result in layoff); *Dep't of Navy v. UCBR*, 168 Pa.Cmwlth. 356, 650 A.2d 1138 (1994) (claimant "believed" his job would be eliminated); *Peoples First Nat'l Bank v. UCBR*, 159 Pa.Cmwlth. 134, 632 A.2d 1014 (1993) (employer indicated a layoff was "possible," but employer "didn't think so"); *Flannery v. UCBR*, 125 Pa. Cmwlth. 64, 557 A.2d 52 (1989) (claimant accepted advanced retirement package based on his belief layoff was "inevitable," despite availability of continuing work).

*Renda*, 837 A.2d at 692. In both *Renda* and *Staub*, the Referees found that the employers

[W]here at the time of retirement suitable continuing work is available, the employer states that a layoff is possible but not likely, and no other factors are found ... that remove an employee's beliefs from the realm of speculation, a claim for unemployment benefits fails despite the offer to leave.

*Id.*

■■■ In this case, the circumstances surrounding Claimant leaving her employment gave her the reasonable belief that she was going to be laid off; were as if she had been specifically told that she was going to lose her job; and were of a necessitous and compelling nature to accept the VERP and leave her employment. First, Claimant alone was called into the Director's office on two different occasions just weeks before the deadline for accepting the VERP. Each time was at the behest of the senior director telling the Director to speak to Claimant and question her as to whether she was going to accept

made continuing work available to the claimants.

5. Claimant also contends that her hearing before the Referee was in violation of the practice and procedures of the Board, contrary to law and in violation of her constitutional rights. Claimant explains that the "Referee acted in a manner that, rather than seeking *information from Claimant to assist in* the development of the issues in the case or advising her of some evidentiary procedure or problem, exceeded the established boundaries and acted in the role of an advocate against Claimant on the one hand and so curtailed Claimant in presenting her case that Claimant was effectively deprived of a full and fair opportunity to present her case and deprived of an impartial hearing." (Claimant's brief at 42.) Claimant contends that she was repeatedly cut off by the Referee each time she tried to explain an answer. Because Claimant proceeded without counsel before the Referee, the applicable Board regulation is as follows:

Where a party is not represented by counsel the tribunal before the hearing is held

the VERP. The discussion was a one-on-one discussion, not a general letter to all employees of the company, letting Claimant know that she should seriously consider accepting the VERP. At the second meeting, when Claimant asked the Director if her job was going to be eliminated, he said "It doesn't look good." (February 3, 2010 Hearing Transcript at 5.) Claimant further testified regarding the Director:

**Claimant:** ..... [H]e felt bad that he had to talk to me. He said ... I didn't feel comfortable talking to you about it. But the senior director said talk to her now.

(February 3, 2010 Hearing Transcript at 8–9.) He then went on to give her the name of his financial person. Under those circumstances, Claimant was justified in believing that her layoff was likely to materialize and that her job was imminently threatened.[5]

should advise him as to his rights, aid him in examining and cross-examining witnesses, and give him every assistance compatible with the impartial discharge of its official duties.

34 Pa.Code § 101.21(a). We have reviewed the hearing transcript and disagree with Claimant's contention. We note that at the hearing, the Referee advised Claimant of her right to have an attorney, to offer witnesses, and to cross-examine witnesses, although there were none. *Miller v. Unemployment Compensation Board of Review*, 83 Pa. Cmwlth. 97, 476 A.2d 495 (1984). The Referee identified all of the documents of record, explained the burden of proof, and explained Section 402(b) of the Law. He then began asking Claimant questions relative to her claim allowing her to answer in full. At no time did Claimant attempt to offer witnesses or evidence. At the end of the hearing, the Referee gave Claimant the opportunity to say anything else that had not been mentioned during the hearing, and Claimant had nothing else to add. At no time did Claimant attempt to say something and the Referee refused to let her speak. Because there is no evidence

■ Accordingly, because Claimant proved a necessitous and compelling reason to voluntarily terminate her employment, the order of the Board is reversed.[6]

### ORDER

AND NOW, this 3rd day of March, 2011, the order of the Unemployment Compensation Board of Review, dated April 19, 2010, at No. B498531, is reversed.

in the record that the Referee was acting as an advocate against Claimant and prevented her from presenting her case, Claimant's argument is without merit.

**6.** Claimant also argues that the Referee erred by finding that Claimant's testimony was hearsay. We agree with Claimant that her discussions with her Director did not constitute hearsay because they were admitted for the effect the statements had on her, not for their truth. *Architectural Testing, Inc. v. Unemployment Compensation Board of Review,* 940 A.2d 1277 (Pa.Cmwlth.2008).