**Matthew MUNSKI, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 20, 2011.

Decided Sept. 27, 2011.

Matthew Munski, pro se.

Maribeth Wilt–Seibert, Assistant Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION By Judge LEAVITT.

Matthew Munski (Claimant) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) denying him benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law).[1] In doing so, the Board affirmed the Referee's determination that he quit without cause of a necessitous and compelling nature. Claimant contends that he did not leave his employment voluntarily and accepted a severance package only because he believed his job was going to be eliminated. Discerning no error by the Board, we now affirm.

Claimant was employed by Verizon Communications, Inc. (Employer) as a full-time service technician, with a final rate of pay of $31.86 an hour. He worked for Employer from February 7, 2005, through July 3, 2010, when he accepted Employer's "Enhanced Income Security Plan" (EISP). Certified Record (C.R. ——), Item No. 2, Service Center Exhibit 4. Claimant then applied for unemployment benefits, which were denied when the UC Service Center determined that Claimant voluntarily left his employment. Claimant appealed, and a hearing was held before a Referee.

At the hearing, Claimant appeared *pro se*. He testified that under Employer's union contract with its employees, only persons hired after August 3, 2003, can be laid off. Further, before a layoff is announced, Employer is required to declare an employee surplus and offer a severance package. In 2009, Employer declared a surplus and offered a severance package to a group of employees, *i.e.*, licensed technicians. At the end of the 2009 process, every licensed technician who was hired after August 3, 2003, and did not take the severance package was laid off.

A letter dated February 26, 2010, from Employer to the union president was offered into evidence by Claimant. The letter stated that Employer was going to offer an EISP to selected employees to reduce the complement of employees.[2] The letter further stated:

> In the event the EISP offer does not sufficiently reduce the force in this organization, this letter serves as notification, pursuant to Article 9, Section 9.05 of the parties' Collective Bargaining Agreement, that the Company may proceed to a layoff of employees with a net credited service date on or after August 3, 2003. The occupational title(s) which could be affected by this anticipated layoff will not be known until after the results of the EISP are evaluated.

C.R., Item No. 2, Service Center Exhibit 4. Employees hired before August 3, 2003, could not be laid off.

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) of the Law provides that an employee is ineligible for compensation benefits if "his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. . . ."

2. The certified record contains a list of the 39 employees with the occupation "service tech-

nician." C.R., Item No. 2, Service Center Exhibit 3 (the document is captioned 1Q10 Surplus, Director—Margaret Buban, Local 13000). Twenty-six of the names on the list are service technicians that were hired prior to August 3, 2003. Of the 13 remaining service technicians subject to the layoff, Claimant had seniority over five of them and was hired on the same day as two of the others.

Claimant testified that Employer circulated a list of 12,000 surplus employees nationwide, with 1,600 in Pennsylvania. Claimant's name, along with the names of every service technician who worked at Claimant's facility, was on the surplus list. When he saw the list, he discussed it with his supervisor, Frank Cilento, who replied that he did not know what would happen but his "best guess [was] yes. I would not have a job." Notes of Testimony at 8 (N.T. ——). Cilento's supervisor advised Claimant's union representative that "[i]f he was in the position, he would take this offer. They are going to eliminate everybody back to 2003." N.T. 8.

Claimant testified that he believed that Employer could not achieve the reduction in force of 12,000 employees without laying off people hired after August of 2003. Accordingly, Claimant accepted the offer. The plan paid Claimant $50,000 and an additional $2,200 for each year of employment for a total of $61,000. Claimant testified that he took the $61,000 because he believed that he was going to lose his job. After he accepted the offer, Employer set his final day of work as July 3rd.

Cilento, Claimant's supervisor, testified for Employer. Cilento denied telling Claimant that he would be laid off if he did not take the offer. He acknowledged that the area manager, Paul Spankenburg, did tell the local union representative that "it was probably in the best interest of any Technician hired after 2003 to probably take [the EISP]." N.T. 10. Cilento testified that to date Employer has not laid off any of the service technicians and that if Claimant had not accepted the offer, he would have continued to work. He stated that Claimant did not have to accept the offer.

The Referee found that Claimant was offered a voluntary EISP and neither Claimant's supervisor nor other members of management informed him that his position would be eliminated if he rejected the offer. In light of that factual finding, the Referee concluded that Claimant voluntarily terminated his employment by accepting the plan. Therefore, Claimant did not have a necessitous and compelling reason to resign.

■ Claimant appealed to the Board. The Board adopted the findings and conclusions of the Referee and affirmed without further opinion. Claimant now appeals to this Court.[3]

■ Claimant raises one issue for our review. He contends that the Board erred in determining that he failed to establish a necessitous and compelling cause for leaving his employment. Specifically, he explains that his belief that a layoff was imminent was based upon what happened in 2009, when Employer laid off employees hired after August 2003 who did not accept the voluntary severance package. Claimant offers three cases in support of his claim, *Wright–Swygert v. Unemployment Compensation Board of Review*, 16 A.3d 1204 (Pa.Cmwlth.2011); *Eby v. Unemployment Compensation Board of Review*, 157 Pa.Cmwlth. 10, 629 A.2d 176 (1993); and an unpublished decision of this Court, *Nazaruk v. Unemployment Compensation Board of Review*, (Pa. Cmwth., No. 1280 C.D. 2010, filed December 30, 2010).[4]

---

3. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law committed or whether necessary findings of fact were supported by substantial evidence. *Shrum v. Unemploy-* *ment Compensation Board of Review*, 690 A.2d 796, 799 n. 3 (Pa.Cmwlth.1997).

4. A party may "cite an unreported panel decision of this Court issued after January 15, 2008, for its persuasive value, but not as bind-

We begin with a review of the Law. The claimant has the burden of establishing that necessitous and compelling reasons existed for leaving his employment. *Empire Intimates v. Unemployment Compensation Board of Review*, 655 A.2d 662 (Pa.Cmwlth.1995). The claimant must establish "that [he] acted with ordinary common sense in quitting [his] job, that [he] made a reasonable effort to preserve [his] employment, and that [he] had no other real choice than to leave [his] employment." *Id.* at 664. In the context of downsizing, we have explained that "mere speculation about one's future job circumstances, and attendant benefits, without more, does not render a decision to voluntarily terminate employment necessitous and compelling." *Petrill v. Unemployment Compensation Board of Review*, 883 A.2d 714, 717 (Pa.Cmwlth.2005).

We turn now to the cases cited by Claimant. In each, this Court concluded that a claimant who had accepted a severance package had not voluntarily quit.

In *Wright–Swygert*, the claimant accepted a voluntary early retirement package and then applied for unemployment benefits. The claimant argued that she was pressured by the employer to take the package and the employer had suggested that her job would be eliminated, giving her a necessitous and compelling cause to leave her position. The record showed that claimant had initially declined the offer, after which she was informed that the senior director wanted her to consider taking the package. A week later the claimant's supervisor told her " 'in general' that her job was going to be eliminated." *Wright–Swygert*, 16 A.3d at 1206. This Court found that the claimant had not voluntarily quit. By contacting the claimant twice to warn her that her job was in danger and urging her to consider accepting the package, the employer led claimant to believe that her position was going to be eliminated.

In *Eby*, the employer offered an employment separation package with the statement that "[y]ou are receiving this information because you are in a group that has identified work to be eliminated, thereby making you eligible for the program." *Id.* at 177 (emphasis omitted). The claimant accepted the package and applied for unemployment compensation benefits. At the hearing, the employer did not appear. The Board concluded that the claimant had failed to present sufficient evidence that he had a valid reason to leave his job. This Court reversed. The only evidence was the claimant's testimony that he believed he would be terminated, and the notice he received from the employer confirmed this belief. We found that this evidence was sufficient to show that the claimant had a necessitous and compelling reason for leaving his employment.

In *Nazaruk*, the claimant was informed by the employer, again Verizon, that if 150 employees did not voluntarily accept a severance package, it would proceed with layoffs as to employees hired after August 3, 2003. The employer then posted a seniority list. The claimant was the 46th employee from the bottom of the list and she was hired after August 3, 2003. Based on the list, the claimant accepted the package and then applied for unemployment benefits. The Referee and the Board determined that the claimant voluntarily left her position and the claimant appealed to this Court. We reversed after finding that the record showed that it was likely that the claimant's job was going to be eliminated.

The Board counters that the cases cited by Claimant are distinguishable. The

ing precedent." Commonwealth Court Internal Operating Procedure § 414.

Board notes that in all three of the cases the employer did not appear or present evidence. In *Eby* and *Nazaruk* the notice from the employer stated that specific positions were to be eliminated; in the present case the notice was general, with the job titles to be affected by a layoff yet to be determined. Further, in *Wright–Swygert,* the claimant was warned that her specific job was to be eliminated. We agree with the Board that these cases are distinguishable.

In *Wright–Swygert,* the claimant was personally contacted twice by the employer and informed that her job would be eliminated. In *Eby* and *Nazaruk,* the claimants were informed that they were in the group targeted for layoff. Further, in *Nazaruk,* the claimant was informed that eliminations would be based on seniority. Here, Claimant merely received a notice that Employer "may" proceed to a layoff if the EISP offer does not sufficiently reduce the workforce. C.R., Item No. 2, Service Center Exhibit 4. It did not target any particular occupational title and stressed that any "occupational title(s) which could be affected by this anticipated layoff will not be known until after the results of the EISP are evaluated." *Id.*

Claimant also argues that Employer's 2009 action, where it terminated employees who did not accept the severance package, gave him a reasonable basis for believing he would be laid off. Further, he notes that his supervisor's boss said that Employer was going to eliminate everyone hired after 2003.

First, Claimant's supervisor denied telling Claimant that his job would be eliminated. The Referee found as fact that "[Claimant's] supervisor and other members of management did not inform [Claimant] that his specific position was going to be eliminated if he rejected the offer." Referee Decision, Finding of Fact No. 8. Unchallenged findings are conclusive on appeal and Claimant has not challenged this finding. *Campbell v. Unemployment Compensation Board of Review,* 694 A.2d 1167, 1169 n. 4 (Pa.Cmwlth.1997).

Second, as to the 2009 event, Claimant's testimony established that Employer targeted one specific category of employees in 2009, the licensed technicians. This is not at all similar to the present action. Here, Employer sent a general notice to a large number of employees and did not identify specific positions to be laid off. To the contrary, it stated that the positions that could be affected were yet to be determined. In short, Claimant failed to present evidence that the 2009 experience was relevant and outcome determinative of Claimant's situation.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 27th day of September, 2011, the order of the Unemployment Compensation Board of Review dated January 6, 2011, in the above-captioned matter is hereby AFFIRMED.