# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Taliah Webb, : 
                     Petitioner : 
                             : 
            v. :   No. 2137 C.D. 2016 
                             :   Submitted: June 23, 2017 
Unemployment Compensation : 
Board of Review, : 
                    Respondent : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge 
                HONORABLE ANNE E. COVEY, Judge 
                HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**           **FILED: August 22, 2017**

Taliah N. Webb (Claimant), pro se, petitions for review from the December 5, 2016 Order of the Unemployment Compensation Board of Review (Board) affirming a UC Referee's (Referee) September 19, 2016 Decision and Order finding her ineligible for unemployment compensation (UC) benefits pursuant to Section 402(e) of the UC Law (Law).[1] Claimant argues that the Board erred in determining she was discharged for willful misconduct in connection with her work at Belmont Behavioral Hospital (Employer). She contends that Employer

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e).

did not provide any evidence to justify its initial reason for her termination and, when pressed, gave another reason for termination altogether. At the hearing, Claimant argues, Employer's witness gave contradictory testimony. Finally, Claimant asserts, her termination was improper because Employer's handbook did not call for termination under these circumstances, and she was not given any warning or retraining before being terminated. Finding no error in the decision of the Board, we affirm.

Claimant was employed by Employer as a full-time behavioral health associate from December 14, 2015 to July 21, 2016, on which date she was discharged. She subsequently applied for UC benefits, which were initially granted by the Department of Labor and Industry (Department). Employer appealed this determination and was granted a hearing before a referee, who reversed the determination of the Department. The Referee's findings of fact are as follows:

1. The [C]laimant was last employed as a full-time Behavioral Health Associate with the employer from December 14, 2015, until July 21, 2016, at a final rate of pay of $16.19 per hour.

2. The employer's Rounds Record policy states that every bedroom should be checked by knocking on the door, and then entering the room to do the observation of a sleeping patient which includes looking for the rise and fall of the chest, counting at least three respirations, and making sure that the patient has moved from his/her previous sleeping position.

3. The employer prohibits employees from sleeping while on duty.

4. The [C]laimant was aware of this policy, as she had acknowledged receiving it during orientation.

5. The [C]laimant's shift was from 11:00 pm to 7:30 am.

2

6. On July 18, 2016, two employees observed the [C]laimant sleeping in the day room; the [C]laimant was awakened but denied sleeping.

7. During this time, the [C]laimant was supposed to make her 15-minute rounds.

8. The employer conducted an investigation.

9. The employer observed the video surveillance camera footage, which showed that the [C]laimant would peep into the rooms, and complete her rounds instead of following the proper procedure.

10. The employer discharged the [C]laimant on July 21, 2016 for sleeping on duty, and for her failure to do the rounds properly.

(Referee's Decision, Findings of Fact (FOF) ¶¶ 1-10.) The Referee determined that the evidence Employer's witness provided regarding the allegation that Claimant was sleeping on duty constituted hearsay and credited Claimant's testimony that she was not sleeping. However, the Referee found that Employer met its burden in proving that Claimant was discharged for willful misconduct in connection with her work based on the testimony of Employer's witness that he had reviewed the video footage and observed Claimant not conducting her rounds in accordance with Employer's rounds policy.[2] Thus, the Referee concluded that

---

[2] The Employer's "Expectations When Rounding" read in pertinent part:

Every bedroom should be checked by knocking lightly on the door, waiting a reasonable amount of time for a response, and then entering the room . . . .
The observation of a sleeping [patient] will include:
a. Looking for the rise and fall of the chest
b. Counting at least three respirations, and
c. Making sure that the [patient] has moved from his/her previous sleeping position.

(Ex. 1 at 2, R. Item 8.)

3

Claimant deliberately violated Employer's policy and, as such, is ineligible for benefits under Section 402(e) of the Law.

Claimant appealed to the Board. In her appeal, Claimant asserted that her conduct did not amount to willful misconduct and specifically challenged findings of fact 2, 4, 6, and 9. Claimant argued that she was not sleeping when the two staff members approached her that morning, but was sitting in the "day room" waiting to conduct her next set of rounds. Despite the testimony of Employer's witness that he observed Claimant failing to follow proper rounds procedure, Claimant argued that she completed her rounds according to the way Employer's staff trained her, and that the Employer failed to provide any evidence that Claimant was aware of the policy. Additionally, Claimant asserted that her discharge was improper because Employer failed to provide any evidence that Claimant had received a warning or been retrained prior to her termination. Claimant averred that the Referee's determination that Claimant intentionally violated Employer's rounds policy was unsupported by substantial evidence. The Board adopted the Referee's findings of fact and conclusions and issued an Order affirming the Referee's decision.

On appeal,[3] Claimant asserts that the Board erred in denying her UC benefits under Section 402(e) of the Law. Claimant argues that the Board erred because Employer was unable to prove she was sleeping on the job, which was the initial reason for her termination, and Employer only accused her of failing to perform her rounds properly after Employer's witness was unable to prove that she had

---

[3] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Havrilchak v. Unemployment Comp. Bd. of Review*, 133 A.3d 800, 803 n.2 (Pa. Cmwlth. 2015).

4

been sleeping on the job. Claimant argues that Employer's witness testified inconsistently at the hearing, first claiming she had done her rounds improperly, then claiming she had not done them at all, and when the Referee pressed him about the inconsistency, again claiming that she had performed them improperly. Additionally, Claimant contends that Employer's witness could not provide any evidence that she performed her rounds improperly and that, though he claimed to be familiar with the unit on which Claimant worked, he works in human resources and rarely came to Claimant's floor. Claimant asserts that Employer's handbook does not state that completing rounds improperly is grounds for termination, but, rather, that making a mistake on the job is grounds for retraining. Because Employer did not warn Claimant or suggest ways she could improve her performance before terminating her, Employer did not follow proper protocol. In any event, Claimant contends, she performed her rounds as she had been trained.

As we perform this review, this Court is cognizant that "[i]n an unemployment compensation proceeding, the Board is the ultimate fact finder and is empowered to resolve conflicts in the evidence and to determine the credibility of witnesses." *Curran v. Unemployment Comp. Bd. of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000). The Board's findings are conclusive and binding on appeal provided that the record, as a whole, contains substantial evidence to support those findings. *Id.* Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1387-88 (Pa. 1985) (internal quotation marks and citation omitted). For this appeal, any unchallenged findings of fact are conclusive. *Munski v. Unemployment Comp. Bd. of Review*, 29 A.3d 133, 137 (Pa. Cmwlth. 2011). In determining if substantial evidence exists, "this

Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence." *Henderson v. Unemployment Comp. Bd. of Review*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013).

Section 402(e) of the Law provides that an employee shall be ineligible to receive unemployment compensation for any week "[i]n which [her] unemployment is due to [her] discharge or temporary suspension from work for willful misconduct connected with [her] work . . . ." 43 P.S. § 802(e). Determining whether a claimant's actions constitute willful misconduct is a question of law that this Court may review. *Caterpillar, Inc. v. Unemployment Comp. Bd. of Review*, 703 A.2d 452, 456 (Pa. 1997). Though the Law does not directly define willful misconduct, the Pennsylvania Supreme Court has held that:

> Willful misconduct is a) wanton or willful disregard for an employer's interests; b) deliberate violation of an employer's rules; c) disregard for standards of behavior which an employer can rightfully expect of an employee; or d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations. The employer bears the burden of proving that the claimant engaged in willful misconduct.
>
> If the employer alleges willful misconduct because the claimant violated a work rule, the employer must prove both the existence of the rule and its violation. We then decide if the violation constituted willful misconduct. In doing so, we examine whether the rule or policy is reasonable in light of all the circumstances and if so, whether the employee had good cause to violate the rule or policy. Reasonableness is determined by whether the employer's application of the rule under the circumstances is fair, just and appropriate to pursue a legitimate interest.

*Id.* at 456-57 (internal quotation marks and citations omitted).

6

Claimant argues that the Board erred in concluding that she was terminated for willful misconduct because Employer changed its initial reason for her termination at the hearing. An employer is bound by the reasons it initially gave for a claimant's dismissal and new reasons cannot be raised at the hearing. *Scott v. Unemployment Comp. Bd. of Review*, 105 A.3d 839, 845 (Pa. Cmwlth. 2014). "[T]he employer must also prove that the act in question was the actual reason for the claimant's discharge." *Panaro v. Unemployment Comp. Bd. of Review*, 413 A.2d 772, 774 (Pa. Cmwlth. 1980). Claimant is correct that Employer was unable to establish that she was sleeping on the job at the hearing, as the Referee correctly determined that Employer's evidence regarding such was inadmissible hearsay.[4] However, Claimant signed a discharge document upon termination which, in addition to referencing Claimant's alleged sleeping on the job, stated that "[f]urther investigation revealed that you failed to complete patient rounds, which includes entering patient rooms, and watching the rise and fall of a patient's chest." (Ex. SC7, R. Item No. 3.) Therefore, Claimant's argument that she was discharged for reasons other than those discussed at the hearing is unpersuasive under these circumstances.

Claimant asserts that the Board erred in concluding that her actions constituted willful misconduct. The Employer's witness established the existence

---

[4] Though the Referee credited Claimant's testimony that she was not sleeping, Finding of Fact 6 still reflects that she had been seen doing so. The Board concedes that, as written, Finding of Fact 6 is unsupported by competent evidence. Regarding such inaccuracies, this Court has previously stated that "[w]hile we do not condone even the slightest inaccuracy in findings of fact, we will not upset a determination of the Board when the inaccuracy has no effect upon the application of the relevant legal principles and the ultimate resolution of the case." *Wetzel v. Unemployment Comp. Bd. of Review*, 370 A.2d 415, 416-17 (Pa. Cmwlth. 1977) (internal footnote omitted).

of the rounds policy at the hearing by entering Exhibit 1, the Rounds Record, into evidence. This record states it is the Employer's policy that, on rounds, the Claimant was expected to do the following:

> Every bedroom should be checked by knocking lightly on the door, waiting a reasonable amount of time for a response, and then entering the room . . . .
>
> The observation of a sleeping [patient] will include:
>
> a. Looking for the rise and fall of the chest
> b. Counting at least three respirations, and
> c. Making sure that the [patient] has moved from his/her previous sleeping position.

(Ex. 1 at 2, R. Item 8.) The Employer's witness established that Claimant was aware of this policy by entering Exhibit 7, Claimant's Orientation Checklist, into evidence. The Orientation Checklist establishes that Claimant both read and discussed the Rounds Policy on December 18, 2015 and is signed by the Claimant. Although Claimant asserts that she was performing her rounds the way she was trained by Employer's staff, the Orientation Checklist shows that Claimant read the policy for herself, and so was aware of Employer's requirements. Therefore, Claimant's failure to perform rounds properly constitutes a deliberate violation of Employer's rules.

Claimant argues that the Board erred when it deemed the firsthand testimony of Employer's witness that she violated the Rounds Policy to be credible. The testimony of Employer's witness established that Claimant had been observed on video simply peeking into the rooms rather than entering them to satisfy the Rounds Policy. As previously stated, questions of witness credibility are for the Board to determine. *Curran*, 752 A.2d at 940. Further, firsthand testimony about

8

the contents of a video is not hearsay because the video itself is non-assertive conduct. *Yost v. Unemployment Comp. Bd. of Review*, 42 A.3d 1158, 1164 n.6 (Pa. Cmwlth. 2012); *see* Pa. R.E. 801(a). Therefore, we find no error in the Board's decision to allow the testimony of Employer's witness.

Claimant asserts that the Board should not have relied on the testimony of Employer's witness due to the contradictory statements he made regarding whether or not she had completed the rounds, but any conflicts in evidence were for the Board to resolve. *Hercules, Inc. v. Unemployment Comp. Bd. of Review*, 604 A.2d 1159, 1163 (Pa. Cmwlth. 1992). The Referee asked for clarification from Employer's witness regarding his testimony,[5] at which point the Employer's

---

[5] The hearing testimony of Employer's witness (EW) before the Referee (R) reads as follows:

EW: I mean, all I can say is that I reviewed the tapes from 4:00 – from 4:30 until 6:00 A.M.
R: From 4:30 . . .
EW: A.M. and 6:00 A.M. She was not viewed doing any rounds until 5:00 A.M. And even – that was after this incident.
R: From 4:30 A.M. . . .
EW: Um-hmm
R: . . . to what time?
EW: Until approximately 6:00 A.M. is what I looked at.
R: No rounds made?
EW: Right. So, when I say no rounds, what I am saying is that she didn't properly do the rounds.
R: Okay.
EW: She walked . . .
R: Rounds not done properly?
EW: Correct. She walked up and down the hallway for about a minute, peered her head into the room and just looked at them. Unfortunately, that's not conducting rounds. Just because you fill out a piece of paper, it does not indicate that that's conducting a round.

(R. Item 8 at 12-13.)

9

witness clarified his statement to reflect that Claimant did not complete the rounds properly. Additionally, Claimant argues that Employer's witness is not familiar with the floor where she worked, but Employer's witness would not have to be familiar with a specific location to know the Employer's policy, watch video footage, and determine that Claimant violated the policy. As no error of law was committed in admitting or crediting the testimony of Employer's witness, these observations are sufficient to establish that Claimant did not perform her rounds properly, thereby violating the Rounds Policy. Based on the testimony of Employer's witness, Employer met its burden in proving that Claimant violated that policy.

Having established that the policy existed and that Claimant violated the policy, this Court must now consider whether the policy was reasonable under the circumstances. According to Employer's Close Level of Observation Policy, patients who are subject to these fifteen minute checks "are assessed to be at risk for suicidal/self-injurious behavior, homicidal/violence toward others, or other behaviors that requires increased level of observation to maintain the safety of the [patient] and unit milieu." (Ex. 3, R. Item 8.) The Rounds Policy requires employees to confirm that each patient is present and unharmed. Failure to properly complete the Rounds Policy could potentially lead to patient harm. As Employer's Code of Conduct states that it is committed "to the creation of behavioral health centers where people receive individualized and quality care that enables them to regain hope in a supportive, caring and financially responsible environment," it is clearly against Employer's interest for a patient to come to harm. (Ex. 5 at 5, R. Item 8.) Therefore, the Rounds Policy is reasonable under the circumstances. Since Employer has established the policy's existence and

10

reasonableness, along with Claimant's deliberate violation thereof, the burden shifted to Claimant to show good cause for violating the Rounds Policy, which she failed to do. *Chester Cnty. Charter Sch. v. Unemployment Comp. Bd. of Review*, 138 A.3d 50, 54 (Pa. Cmwlth. 2016). Thus Claimant's improper performance of rounds constitutes willful misconduct.

Claimant finally argues that the Board erred in finding that Employer followed proper protocol in her discharge because she was neither retrained nor warned before being terminated. While Employer does maintain a progressive discipline policy, patient abuse or neglect is listed among the "behaviors that could result in immediate termination." (Ex. 4 at 3, R. Item 8.) The Employer's policies define patient neglect as "failing to provide for the patient's basic emotional or physical needs or failing in any way that would endanger the patient's emotional or physical well-being." (Ex. 2 at 1, R. Item 8.) As previously established, failure to properly complete rounds to observe patients who are considered a risk to themselves or others places said patients at emotional or physical risk. Further, Claimant argues that a mistake on the job requires retraining, but, as previously established, Claimant's actions were intentional rather than mistaken. Therefore, Claimant's failure to perform rounds properly amounts to patient neglect and was grounds for immediate termination.

Based on the foregoing, we affirm the Board's Order, which determined Claimant was ineligible for benefits under Section 402(e) of the Law.

_____

**RENÉE COHN JUBELIRER,** Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Taliah Webb,                                    :
                        Petitioner              :
                                                :
            v.                                  :     No. 2137 C.D. 2016
                                                :
Unemployment Compensation                       :
Board of Review,                                :
                        Respondent              :

# **O R D E R**

**NOW**, August 22, 2017, the Order of the Unemployment Compensation Board of Review, dated December 5, 2016, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge