# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nancy L. Gavin, : 
            Petitioner : 
             : 
          v. :   No. 1751 C.D. 2016
             :   Submitted: May 26, 2017
Unemployment Compensation : 
Board of Review, : 
            Respondent : 

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**          **FILED: August 23, 2017**

Nancy L. Gavin (Claimant), representing herself, petitions for review of an order of the Unemployment Compensation Board of Review (Board) denying her unemployment compensation benefits under Section 402(b) of the Unemployment Compensation Law (Law).[1] Claimant contends the Board erred in determining that she voluntarily left her employment without cause of a necessitous and compelling nature where her employer implemented substantial unilateral and deceptive changes in the conditions of her employment, and where she made reasonable efforts to preserve her employment. Claimant also asserts the Board's essential findings were not supported by substantial evidence. Upon review, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(b). Section 402(b) of the Law provides "[a]n employe shall be ineligible for compensation for any week … [i]n which [her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature …." 43 P.S. §802(b).

# I. Background

The Board found the following facts. Claimant worked for the Commonwealth, Department of Labor and Industry (Employer) as a full-time Administrative Officer I from May 18, 2010 until June 27, 2016. Her job requirements included the ability to lift up to 60 pounds and to do other duties as assigned. Claimant also supervised two Maintenance Repair II (MRII) positions. Their job responsibilities included lifting, unloading trucks and moving furniture.

During October 2015, Claimant worked under lifting restrictions as a result of a medical procedure. Employer accommodated Claimant's restrictions. Also in October 2015, one of the two MRIIs left. Consequently, Employer expected Claimant to assist in lifting and moving duties. However, Employer did not expect Claimant to lift heavy objects.

In mid-June 2016, the second MRII left. About the same time, Claimant's doctors lifted her medical restrictions and released her to full duty. On or about June 20, 2016, Robyn Graham (Administrative Officer III), advised Claimant that if she needed help unloading trucks, to let Administrative Officer III know. On June 23, 2016, Claimant sent Administrative Officer III an email mentioning John Smith (Supervisor), her direct supervisor and an Administrative Officer II, dedicating two days per week to equipment control.

On June 27, 2016, her last day of work, Claimant distributed 48 chairs on three floors of the Labor and Industry Building. Although there were other

employees available to help her, Claimant did not ask for any assistance. Maintenance was also available to help if no MRIIs were available.

Claimant, however, thought Supervisor would complete the moving and lifting tasks by himself.  On June 27, Supervisor emailed Claimant that he would help her complete the moving and lifting tasks two days per week.    In response, Claimant responded that she could not do this work anymore and advised Supervisor that she would resign at the close of business that day.

Supervisor did not understand Claimant's response and asked her to discuss the situation.  Claimant responded that there was nothing to discuss. Supervisor then went to Claimant's desk and told her that they could work through this.  Claimant responded that she did not wish to discuss it and that she was done at the end of the day.

In addition, Employer's Division Chief for Contracts, Property Management and Designer Renovation, Richard Faul (Division Chief) last saw Claimant around lunchtime and asked if she planned on coming to see him. However, Claimant informed Division Chief that she was done.

Based on these facts, the Board determined Claimant voluntarily resigned because she believed Employer was asking her to perform the duties of an MRII.  Claimant felt that she could not perform the physical aspects of the job Employer asked her to perform.  Claimant also appeared unhappy with Employer's response for her requests for help.

Following her separation, Claimant filed an application for unemployment benefits. The Department of Labor and Industry (Department) issued a notice of determination ruling Claimant ineligible for benefits under Section 402(b) (voluntary quit). See Certified Record (C.R.), Item No. 6. The Department determined that there were alternatives to resolve the situation, and Claimant did not exhaust all the alternatives prior to quitting. Id.

Claimant appealed and testified at a referee's hearing. Employer, represented by counsel, presented the testimony of four witnesses. Following the hearing, the referee affirmed the Department's notice of determination and denied Claimant benefits under Section 402(b). In her decision, the referee stated:

> In this present case, [Claimant] contends the percentage of physical work she was being required to perform exceeded the amount on her position description, and felt [Employer] was ignoring her requests for assistance. However, [Claimant's] position description does not provide any percentages with respect to the amount of physical work she may be required to perform. Additionally, although [Claimant] was assisting with the [MRII] work, [Employer] accommodated her health restrictions until they were lifted and [Claimant] failed to request assistance from [Supervisor] or other co-workers. [Supervisor's] request that [Claimant] be available on days he was scheduled to provide assistance was a reasonable request. Under the circumstances, [Claimant] has not met her burden in proving her reasons for leaving work were necessitous and compelling. Accordingly, benefits are denied under Section 402(b) of the Law.

Referee's Op., 8/19/16 at 3 (emphasis added).

Claimant appealed. In affirming the referee and holding Claimant ineligible for benefits under Section 402(b), the Board stated:

4

> [Claimant] voluntarily resigned because she believed she was being asked to perform the duties of an [MRII], did not feel that she could perform the physical aspects of the job that were being asked of her, and was unhappy with the response from management for her requests for help. The [Board] concludes that the modification of [Claimant's] job duties was reasonable because two [MRIIs] left and others needed to help cover their job duties. The Board concludes that [Employer's] reasonable modification in the [Claimant's] job duties was not a substantial unilateral change in [Claimant's] employment nor was [Claimant] deceived as to the conditions of employment. [Claimant's] job description specifically required [Claimant] to be able to lift up to sixty pounds with no cap or percentage of how often she would be required to do so. The job description also listed as job duties the completion of tasks assigned.
>
> Even were the Board to find that there was, in fact, a substantial change in the employment agreement or that [Claimant] was deceived as to conditions of employment, fatal to [Claimant's] case is the fact that there were others who could have helped her perform her job duties, such as [Administrative Officer III], [Supervisor], and maintenance, but [Claimant] did not ask them for help. On the day [Claimant] resigned, two people, [Supervisor] and [Division Chief], asked [Claimant] to discuss the matter, but [Claimant] had already made up her mind to quit and refused to discuss the matter any further. Therefore, the Board concludes [Claimant] did not make reasonable efforts to preserve her employment before quitting.

Bd. Op., 10/13/16 at 3-4 (emphasis added). Claimant petitions for review.[2]

---

[2] Our review is limited to determining whether the Board's necessary findings were supported by substantial evidence or whether the Board erred or violated the petitioner's constitutional rights. Doyle v. Unemployment Comp. Bd. of Review, 58 A.3d 1288 (Pa. Cmwlth. 2013). Substantial evidence is evidence which a reasonable mind would accept as

**(Footnote continued on next page…)**

5

## II. Discussion

### A. Issues

Claimant contends the Board erred in determining that she voluntarily left her employment without cause of a necessitous and compelling nature where Employer implemented substantial unilateral and deceptive changes in the conditions of her employment, and where she made reasonable efforts to preserve her employment. Claimant also asserts the Board's essential findings were not supported by substantial evidence.

### B. Argument

Claimant asserts she had a necessitous and compelling reason to separate from her employment. As Claimant acknowledges, an employee who claims she quit for necessitous and compelling reasons must prove: (1) circumstances existed that produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the employee acted with ordinary common sense; and, (4) the employee made a reasonable effort to preserve her employment. Brunswick Hotel & Conference Ctr., LLC v. Unemployment Compensation Board of Review, 906 A.2d 657 (Pa. Cmwlth. 2006). Nonetheless, an employer's imposition of a substantial unilateral change in the terms of employment may constitute necessitous and compelling cause for a voluntary quit. Id. Further, there is no

_____

(continued…)

adequate to support a conclusion. Umedman v. Unemployment Comp. Bd. of Review, 52 A.3d 558 (Pa. Cmwlth. 2012).

6

talismanic percentage for determining change so substantial as to warrant a necessitous and compelling reason to leaving employment. Id. Rather, each case must be examined in accord with its individual circumstances. Id.

Claimant acknowledges a unilateral alteration in a condition of employment must be substantial in order to constitute a necessitous and compelling reason for a compensable voluntary quit. McCarthy v. Unemployment Comp. Bd. of Review, 829 A.2d 1266 (Pa. Cmwlth. 2003). The focus of the inquiry is on the impact the employer's changes have on the employee, not the employer's reasons for implementing the changes. Id. To that end, "substantiality" involves a significant change in employment conditions which renders the job unsuitable. Id. at 1272.

Here, Claimant asserts she held her last position as Administrative Officer I from April 2015 through her last day on June 27, 2016. Although her job description required the ability to lift 60 pounds, her primary duties were administrative. They included scheduling pickups and deliveries, organizing surplus, and working as a liaison to general services.

In addition, Claimant supervised two MRII positions. The primary responsibilities of an MRII involve loading and unloading trucks. An Administrative Officer I is expected to briefly assume the duties of an MRII who is on leave or unable to perform a task without assistance. In October 2015, one of the MRIIs left work. In June 2016, the other MRII left work. Because of the budget impasse, the Department could not readily fill these positions.

7

Consequently, Claimant worked in the capacity of both an Administrative Officer I and an MRII from October 2015 to her last day of work. In particular, Claimant asserts, during her last two weeks of work she performed all the essential functions of both positions.

In sum, Claimant maintained she performed the essential function of one MRII for eight months and two MRIIs during her last two weeks. Claimant asserts this resulted in an amount of physical labor beyond the terms of her employment as an Administrative Officer I. Therefore, Claimant argues, Employer's expectation that she perform physically laborious tasks outside of her administrative duties for an extended period of time constitutes a substantial unilateral change in her employment conditions thereby justifying her voluntary quit.

Claimant also contends Employer deceived her as to the suitability of the job at the time she accepted it. Sixty years of age at the time she accepted the position, Claimant believed her daily job duties were administrative. She did not have the physical abilities necessary to load and unload trucks, move furniture and perform other laborious tasks on a regular basis. Although Claimant understood some physical labor was occasionally necessary, Employer never outlined, inferred or explained to her that she would be required to perform the physical tasks of an MRII for eight or more months during a budget impasse. Rather, Employer forced such physical exertion upon her, without any evaluation as to her suitability to perform such work, after she accepted the position. Therefore, Claimant argues Employer deceived her as to the suitability of the position.

8

In addition, Claimant asserts she made reasonable efforts to preserve her employment by making repeated requests for assistance and by offering suggestions for alternative ways to remedy the situation. Claimant maintains Supervisor disregarded her requests as indicated by the fact Employer's other witnesses at the referee's hearing, Nathan Bortner (Director), the Department's Director of Administrative Services, Administrative Officer III and Division Chief testified they were unaware that Claimant was having trouble performing her job. Claimant posits that if Supervisor actually forwarded her concerns to his supervisors, Director, Division Chief and Administrative Officer III would have been aware of her problems performing the physical tasks. However, given the fact Employer completely disregarded her requests for assistance, Claimant argues the Board erred in determining she did not make reasonable efforts to preserve her employment.

## C. Analysis

### 1. Burden of Proof

Whether a claimant had cause of a necessitous and compelling nature to voluntarily leave her employment is a question of law subject to appellate review. Anne Kearney Astolfi DMD PC v. Unemployment Comp. Bd. of Review, 995 A.2d 1286 (Pa. Cmwlth. 2010). A claimant seeking benefits following a voluntary quit bears the burden of demonstrating a necessitous and compelling reason for leaving her employment. Id. As noted above, an employee who claims she quit for necessitous and compelling reasons must prove: (1) circumstances existed that produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner;

9

(3) the employee acted with ordinary common sense; and, (4) the employee made a reasonable effort to preserve her employment. <u>Wert v. Unemployment Comp. Bd. of Review</u>, 41 A.3d 937 (Pa. Cmwlth. 2012).

In addition, a disagreement with an employer's policies or dissatisfaction with an employer's management style does not constitute a compelling reason for a voluntary quit under Section 402(b). <u>Gioia v. Unemployment Comp. Bd. of Review</u>, 661 A.2d 34 (Pa. Cmwlth. 1995). Further, multiple causes, which, considered separately, do not constitute necessitous or compelling cause, do not in combination become necessitous and compelling. <u>Spadaro v. Unemployment Comp. Bd. of Review</u>, 850 A.2d 855 (Pa. Cmwlth. 2004).

## 2. Board's Findings of Fact

In unemployment compensation cases, the Board, as the ultimate fact-finder, is empowered to resolve all issues of witness credibility, conflicting evidence and evidentiary weight. <u>Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review</u>, 949 A.2d 338 (Pa. Cmwlth. 2008). Also, it is irrelevant whether the record includes evidence that would support findings other than those made by the Board; the proper inquiry is whether the evidence supports the findings actually made. <u>Id.</u> Further, the party prevailing below is entitled to the benefit of all reasonable inferences drawn from the evidence. <u>Id.</u>

Here, the Board made 19 findings of fact. Claimant, however, asserts the Board's essential findings were not supported by substantial evidence. In

response, the Board asserts Claimant waived her substantial evidence challenge by failing to develop such an argument in her brief. After reviewing Claimant's brief, we must agree with the Board. Although Claimant raises a one-sentence substantial evidence challenge in her Statement of Questions Involved and again in her Summary of Argument, she does not otherwise discuss this issue in her brief or specify which findings are not supported by the evidence. Unchallenged findings are conclusive on appeal. Munski v. Unemployment Comp. Bd. of Review, 29 A.3d 133 (Pa. Cmwlth. 2011). In addition, arguments not properly developed in an appellate brief are deemed waived. Rapid Pallet v. Unemployment Comp. Bd. of Review, 707 A.2d 636 (Pa. Cmwlth. 1998).

Nevertheless, we construe filings by uncounseled claimants liberally when we are able to discern the legal issues raised. Smithley v. Unemployment Comp. Bd. of Review, 8 A.3d 1027 (Pa. Cmwlth. 2010). As such, we will review the record to determine whether the record supports the Board's essential findings.

First, the Board found Employer's job description for the Administrative Officer I position included the ability to lift up to 60 pounds and perform other duties as assigned. Finding of Fact (F.F.) No. 2; Notes of Testimony (N.T.), at 11; Employer's Ex. #3 (job description). However, it did not specify how much lifting Employer expected.

Claimant acknowledged that she supervised two MRII positions whose job duties included lifting, unloading trucks and moving furniture. F.F. No. 3; N.T. at 10, 33. In October 2015, one of the MRIIs left about the time Claimant

11

underwent a medical procedure and worked under lifting restrictions. F.F. Nos. 4-5; N.T. at 11, 16, 34. Employer accommodated Claimant's medical restrictions until her doctor lifted them as of June 15, 2016. F.F. Nos. 4, 6; N.T. at 11-12.

Also in mid-June 2016, approximately two weeks prior to Claimant's separation, the second MRII left. F.F. No. 7; N.T. at 32. About June 20, Administrative Officer III told Claimant that if she needed help unloading trucks to let her know. F.F. No. 8; N.T. at 32. On June 23, Claimant emailed Administrative Officer III about Supervisor's intention to dedicate two days per week to help with equipment control. F.F. No. 9; N.T., Employer's Ex. #4 at 3-4. Claimant thought Supervisor <u>alone</u> would be completing the lifting and moving tasks. F.F. No. 13 (emphasis added); N.T. at 7, 13.

On June 27, Claimant distributed 48 chairs to the basement, first and second floors of the Labor and Industry Building. F.F. No. 10; N.T. at 7, 38. Claimant did not ask for assistance in performing this task; there were other employees available to help her. F.F. No. 11; N.T. at 33. The same day, Supervisor sent Claimant an email stating he would help Claimant two days a week with moving and lifting tasks. F.F. No. 14; N.T. at 7, 36.

Claimant replied by email to Supervisor, stating "Helping me? I can't do this anymore. I am resigning effective COB [close of business] today." F.F. No. 15; N.T., Employer's Ex. #4 at 3. Supervisor replied: "I'm sorry. I don't understand your response. Can we discuss?" F.F. No 16, Employer's Ex. #4 at 3. In addition, Supervisor testified he walked over to Claimant's desk and said this is

not the way you want to do this, we can work through this, and "she point blank told me I do not wish to discuss it, I'm done at the end of the day." See F.F. No. 17; N.T. at 37.

In addition, Division Chief testified he saw Claimant around lunchtime on June 27 and asked her if she was coming to see him. F.F. No. 18; N.T. at 26. Claimant told Division Chief that she was done and that there was nothing further to talk about. F.F. No. 18; N.T. at 25-26.

Ultimately, the Board determined Claimant voluntarily quit because she believed she was asked to perform the duties of an MRII, which she felt she could not perform because of the position's physical requirements. F.F. No. 19. Also, Claimant was unhappy with Employer's response to her requests for help. Id. These findings are supported by the following testimony from Claimant (with emphasis added):

> I felt as though I was expected to pick up the duties of the MRII, Maintenance Repairman II, which I no longer had any. One left in October. The other one had left two weeks prior, mid June. And, quite honestly, I fell apart. I just couldn't do it anymore. I forwarded the email to [Division Chief] and we went to his office and I said [Supervisor] was trying to turn me into an MRII. He denied that. I said I cannot do this anymore, Rich, and he said everyone has to pitch in. I'd been pitching in since October just to keep the peace because whenever it came up that it was too much for me, it turned into – [Supervisor] throws these passive aggressive little hissy fits.

13

N.T. at 8. Having determined the Board's findings are amply supported by substantial evidence, we dismiss Claimant's evidentiary challenge.

### 3. Board's Decision

As noted above, Claimant contends the Board erred in determining she voluntarily quit without necessitous and compelling cause where Employer implemented substantial, unilateral and deceptive changes in the conditions of her employment, and where she made reasonable efforts to preserve her employment. We disagree.

Generally, by voluntarily accepting employment which she later terminates, a claimant admits to the initial suitability of the terms and conditions of her employment. Kistler v. Unemployment Comp. Bd. of Review, 416 A.2d 594 (Pa. Cmwlth. 1980). When an employer hires an employee, the employee is usually assigned to perform particular tasks. Id. However, an employer need not promise it will never modify an employee's tasks. Id. As long as the modifications are reasonable, the employee must abide by the modifications or risk ineligibility for unemployment benefits. Id.

Here, Claimant accepted an Administrative Officer I position, which required her to be able to lift 60 pounds and to perform other duties as assigned. As a result of budget impasse and a lack of acceptable applicants, Employer could not fill the MRII positions under Claimant's supervision as they became vacant. The first vacancy in the MRII position occurred in October 2015. Supervisor testified that Employer expected Claimant, like other employees, to help with some

14

of the duties previously performed by the departed MRII. N.T. at 33-34. In addition, Administrative Officer III testified she advised Claimant several days prior to her resignation to let her know if she ever needed help with the physical aspects of her job. F.F. No. 8; N.T. at 32. As such, we view Employer's modification of Claimant's duties to be reasonable. Kistler. Also, similar to Kistler, the record contains no evidence indicating these changes were permanent. Therefore, given the amount of help available to Claimant, we reject her contention that Employer's changes to her job duties were so substantial and deceptive as to constitute a necessitous and compelling cause for a compensable voluntary quit. Id.

Moreover, despite Employer's notice to Claimant that help was available, Claimant did not request any help on June 27, the day she resigned. F.F. Nos. 10, 11.

In addition, we must recognize Claimant's decision on June 27 to resign effective immediately that afternoon despite requests from Supervisor and Division Chief to reconsider her decision and make an attempt to "work through" the situation in order to preserve her employment. As reflected by the applicable case law, Claimant's refusal to discuss her reasons for quitting with Employer prior to her resignation, despite repeated requests to do so, constitutes a significant factor in rendering her ineligible for benefits under Section 402(b) of the Law. See Middletown v. Unemployment Comp. Bd. of Review, 40 A.3d 217 (Pa. Cmwlth. 2012) (a claimant seeking benefits for a voluntary quit based on necessitous and

compelling cause is nevertheless required to make reasonable efforts to preserve her employment).

### III. Conclusion

For the above reasons, we discern no error or abuse of discretion in the Board's decision holding Claimant ineligible for unemployment compensation benefits. Accordingly, we affirm the Board's order.

_____
ROBERT SIMPSON, Judge

Judge Hearthway did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nancy L. Gavin,                          :
                         Petitioner     :
                                  :
             v.                         :     No. 1751 C.D. 2016
                                  :
Unemployment Compensation               :
Board of Review,                         :
                       Respondent     :

# **O R D E R**

**AND NOW**, this 23rd day of August, 2017, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.

 

 

_____
ROBERT SIMPSON, Judge