ANN KEARNEY ASTOLFI
DMD PC., Petitioner

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 22, 2010.
Decided May 27, 2010.

Alfred S. Pierce, Nazareth, for petitioner.

Erin K. Boylan, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.

Ann Kearney Astolfi DMD PC (Employer) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) granting benefits to Dorene W. Ditomasso (Claimant). In doing so, the Board reversed the decision of the Referee that Claimant was ineligible for benefits under Section 402(b) of the Unemployment Compensation Law (Law), 43 P.S. § 802(b) because she had voluntarily left her job.[1] Concluding that the facts, as found, do not support the Board's conclusion that Claimant resigned from her job for necessitous and compelling reasons, we reverse the Board.

Claimant worked for Employer as a receptionist and surgical assistant from August 2006 to March 2, 2009, when she resigned. Claimant did so because she claimed to have been subjected to repeated verbal abuse by Dr. Astolfi and by one of her coworkers. She then applied for unemployment compensation benefits, and they were granted by the UC Service Center. Employer appealed, and the matter was assigned to a Referee. Employer did not participate in the hearing before the Referee on May 13, 2009.[2]

Claimant testified that the dental office, consisting of Dr. Astolfi and four employees, was "constant chaos in a small situation." Reproduced Record at 29a (R.R. ___). After a former assistant, Gretchen Kelly, was rehired in 2008, Claimant was thrust into the midst of an ongoing conflict between Kelly and a receptionist. On several occasions, Claimant met with Dr. Astolfi to express her discomfort at having to act as this intermediary. According to Claimant,

> "[t]his went on for three months. Several times I approached Dr. Astolfi in her office with her door closed and her telling me I was draining her energy and acting like one of her children, that I needed to be more aggressive and . . . just tell them to deal with it. . . ."

R.R. 27a–28a. On another occasion Claimant missed work, on a Friday, because of bronchitis. When she returned on Monday, no one spoke to her. A few days later, Dr. Astolfi summoned Claimant into her office and told her to "shape up" or she would "end up like" a former employee who had been terminated. R.R. 29a. When Claimant started to cry, Dr. Astolfi remarked that crying is a sign of immaturity.

The final incident that caused Claimant's resignation occurred on March 2, 2009. On that day, Claimant had spent extra time in a post-operative session with a patient whose mother had recently passed away so that she could offer condolences. According to Claimant, after the patient left the office, Dr. Astolfi and Gretchen Kelly "started yelling at me for speaking too long to this patient. They told me that I talk way too much." R.R. 30a. Claimant reminded them that at a staff meeting earlier that day they had complimented her for making the patients feel comfortable. Kelly responded, "maybe you just need to stop talking." Id.

Claimant testified that this chaotic work environment caused her to develop high blood pressure and to incur bouts with

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(b). It states, in relevant part, that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature."

2. Employer's representative testified at a subsequent remand hearing that Employer never received notice of the hearing date. Reproduced Record at 55a.

hives. Claimant testified that two doctors had advised her to resign from her job. In support, she introduced a note dated April 22, 2009, from her psychiatrist, Dr. Abel Gonzalez, stating that Claimant "expressed to me severe stress from the conditions at her work." R.R. 73a. Claimant also offered a note dated April 23, 2009, from her chiropractor, Dr. Angela Kelly, opining that Claimant's headaches "were likely associated with clenching of the jaw and cervical spine dysfunction." R.R. 74a. Dr. Kelly observed that clenching of the teeth is a "direct response to stress," and that Claimant had complained of work stress on several occasions. *Id.* Dr. Kelly wrote that she had "seen a difference in [Claimant's] health since she left her job." *Id.*

The Referee denied benefits, reasoning that upset emotions and an inability to get along with coworkers do not constitute cause of a necessitous and compelling nature to quit one's job. The Referee also held that Claimant failed to offer sufficient evidence to prove that she quit her job for medical reasons. Claimant appealed to the Board. The Board determined that the record was incomplete and remanded the matter for additional testimony before a Referee designated as the Board's hearing officer. The hearing officer conducted the remand hearing on July 27, 2009.

Claimant's testimony was similar in substance to that presented at the first hearing. She explained her belief that Dr. Astolfi was trying to induce her to quit by slowly taking away her responsibilities after Kelly was rehired. Claimant testified that being "picked on" and criticized at work caused her great anxiety and stress. R.R. 53a. Claimant believed her resignation was medically necessary, and she reiterated that two doctors had advised her to resign. Claimant offered a follow-up letter

from her chiropractor, Dr. Kelly, dated May 22, 2009, stating that

> I had asked [Claimant] on several occasions if it would be possible for her to leave her job due to medical reasons. Her current occupation was adversely affecting her health and I felt that it was necessary for her to leave her job if she was going to improve. Her health was declining largely due to the ongoing stress at her work place.

R.R. 40a.

At the remand hearing, Dr. Astolfi disputed Claimant's characterization of the work atmosphere and the events leading up to Claimant's resignation. She acknowledged that Claimant had approached her about her stress level but added that Claimant never informed her that a doctor had advised her to resign. Dr. Astolfi disagreed that she and Claimant had an adversarial relationship or that she had ever yelled at Claimant. Dr. Astolfi could not understand Claimant's statement that she feared reprisal or termination, noting that when Claimant tendered her resignation, Dr. Astolfi asked her not to leave and gave her two weeks to think about her decision.

The Board reversed the Referee's decision and granted Claimant's claim for benefits. Acknowledging that verbal reprimands do not justify a voluntary quit, the Board also observed that this is not the case for verbal abuse. The Board credited Claimant's testimony that she was "verbally abused" by Dr. Astolfi and Gretchen Kelly and found, further, that Claimant took reasonable steps to preserve her employment by presenting her concerns to Dr. Astolfi. Employer now petitions for this Court's review.

On appeal,[3] Employer argues that the Board erred in determining that

---

3. Our review is limited to determining wheth- er constitutional rights were violated, whether

Claimant demonstrated cause of a necessitous and compelling nature for voluntarily resigning her employment. Employer contends that Claimant's testimony did not describe workplace treatment that rose to the level of abuse. We agree.

■ The law is well settled that a resignation prompted by normal workplace pressure will not be considered a voluntary resignation. We have explained that a

> [n]ecessitous and compelling cause for voluntarily leaving employment [is one that] results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner.

*Mercy Hospital of Pittsburgh v. Unemployment Compensation Board of Review,* 654 A.2d 264, 266 (Pa.Cmwlth.1995) (citing *Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 378 A.2d 829 (1977)). Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review. *Wasko v. Unemployment Compensation Board of Review,* 88 Pa.Cmwlth. 16, 488 A.2d 388, 389 (1985). Based upon the record before us, we cannot say that Claimant's work environment was intolerable or that a reasonable person would have acted in the same manner.

■ Our case law distinguishes normal workplace strains from pressures extreme enough to justify a resignation. As we have explained:

> Resentment of a reprimand, absent unjust accusations, profane language or abusive conduct ...; mere disappointment with wages ...; and personality conflicts, absent an intolerable working

atmosphere ... do not amount to necessitous and compelling causes.

*Lynn v. Unemployment Compensation Board of Review,* 58 Pa.Cmwlth. 178, 427 A.2d 736, 737 (1981). In *First Federal Savings Bank v. Unemployment Compensation Board of Review,* 957 A.2d 811 (Pa. Cmwlth.2008), the claimant complained to her superiors about a disruptive, argumentative coworker who was disrespectful toward her in front of other employees. In response to this complaint, the president of the company called a meeting where he attacked claimant's leadership skills and competency; referred to claimant and her management team as "criminals;" and subjected claimant to discipline while yelling at her and refusing to allow her to respond. *Id.* at 814. The Board believes that the holding in *First Federal* supports its conclusion here, but we do not agree.

Claimant was not publicly reprimanded or accused of being a criminal like her counterpart in *First Federal.* She was not subjected to the kinds of intolerable abusive language experienced by successful claimants in other voluntary quit cases. *See, e.g., Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 378 A.2d 829 (1977) (African–American claimant subjected to repeated racial slurs and prejudicial treatment for three years); *Mercy Hospital of Pittsburgh,* 654 A.2d at 266 (coworkers excessively taunted claimant with names such as "alcoholic," "faggot," and "crazy"); *Danner v. Unemployment Compensation Board of Review,* 66 Pa.Cmwlth. 252, 443 A.2d 1211, 1213 n. 2 (1982) (claimant testified that "a number of his fellow employees, including his foreman, had questioned him as to whether or not his girlfriend had had a sex change operation and that they often verbally

an error of law was committed and whether necessary findings of fact are supported by substantial evidence. *First Federal Savings*

*Bank v. Unemployment Compensation Board of Review,* 957 A.2d 811, 814 n. 2 (Pa.Cmwlth. 2008).

abused him in an extremely derogatory manner and physically pushed him.").

In short, Claimant's testimony demonstrated "resentment" and "personality conflicts," *Lynn,* 427 A.2d at 737, but not an intolerable work environment. Being "yelled" at for talking too much to patients, which is the worst Claimant suffered, is not comparable to being called names or being unjustly accused of criminal conduct. Her work environment was uncomfortable, but not intolerable.

██ The dissent emphasizes that Claimant was advised by her chiropractor to quit her job, and argues that a reasonable person suffering from rashes, headaches and high blood pressure caused by circumstances at work would feel compelled to terminate her employment. This is beside the point, since Claimant did not establish the elements necessary to have a compelling medical reason to quit:

> To establish health problems as a compelling reason to quit, the claimant must (1) offer competent testimony that adequate health reasons existed to justify the voluntary termination, (2) *have informed the employer of the health problems* and (3) be available to work if reasonable accommodations can be made. *Genetin v. Unemployment Compensation Board of Review,* 499 Pa. 125, 451 A.2d 1353 (1982). Failure to meet any one of these conditions bars a claim for unemployment compensation....

*Lee Hospital v. Unemployment Compensation Board of Review,* 161 Pa.Cmwlth. 464, 637 A.2d 695, 698 (1994) (emphasis added) (citation omitted). Claimant met with Dr. Astolfi to discuss the tension between her coworkers, but she never informed Dr. Astolfi of any health problems or that her chiropractor had advised her to quit. Absent such evidence, Claimant's alleged health problems are simply not relevant.

In sum, because Claimant did not establish a necessitous and compelling reason to quit her job, we reverse the Board's order.

### *ORDER*

AND NOW, this 27th day of May, 2010, the order of the Unemployment Compensation Board of Review in the above-captioned matter, dated August 26, 2009, is REVERSED.

DISSENTING OPINION BY Senior Judge FRIEDMAN.

I respectfully dissent. The majority opinion reverses the decision of the Unemployment Compensation Board of Review (Board), which awarded benefits to Dorene W. Ditomasso (Claimant) after concluding that the verbal abuse she endured at work, which caused her to suffer from rashes, headaches and high blood pressure and prompted her physician to advise her to leave her employment, was a necessitous and compelling reason for resigning from her job in the dental office of Ann Kearney Astolfi DMD PC (Employer). I see no error in this conclusion.

Claimant worked as a receptionist and surgical assistant for Employer. The Board found that Employer yelled at Claimant when Claimant did not perform her job duties satisfactorily and that Employer told Claimant she was not worth the amount of money she was paid. (Board's Findings of Fact, Nos. 5–6.) The Board also found that Employer's verbal abuse caused Claimant to suffer from rashes, headaches and high blood pressure and that Claimant's physician advised her to leave her employment for the sake of her health. (Board's Findings of Fact, Nos. 8–9.) Claimant discussed the situation with Employer, but Employer told Claimant to deal with it herself. (Board's Findings of Fact, No. 10.)

A person has a necessitous and compelling cause for voluntarily leaving her employment where circumstances produce pressure to terminate employment that is both real and substantial and that would compel a reasonable person to act in the same manner. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977). Personality conflicts, absent an intolerable work atmosphere, do not amount to a necessitous and compelling cause for leaving one's employment. *Lynn v. Unemployment Compensation Board of Review*, 58 Pa.Cmwlth. 178, 427 A.2d 736 (1981).

Here, Employer's verbal abuse produced pressure on Claimant that was both real and substantial. Indeed, the pressure caused Claimant to suffer from rashes, headaches and high blood pressure. Moreover, any reasonable person suffering such physical maladies as a result of circumstances at work would be compelled to terminate her employment. In fact, Claimant's physician advised Claimant to do just that. To the extent Employer's verbal assaults on Claimant were due to personality conflicts, given their effect on Claimant's health, they were intolerable. A claimant should not be required to continue to endure a work environment that causes such afflictions as rashes, headaches and high blood pressure.

The majority states, "We cannot say on this record that Claimant's work environment was intolerable or that a reasonable person would have acted in the same man-

ner." (Majority op. at 1289.) In other words, the majority concludes that: (1) Claimant should continue to tolerate the rashes, headaches and high blood pressure caused by Employer's insults and yelling; and (2) Claimant's physician is not a reasonable person for suggesting that Claimant quit her job for the sake of her health. I cannot agree with these conclusions.

The majority also suggests that, pursuant to case law, verbal abuse cannot be a necessitous and compelling reason to leave employment unless it is public, racial or sexual in nature. (Majority op. at 1289–1290.) However, abusive conduct of any kind is always a necessitous and compelling reason for leaving employment. *First Federal Savings Bank v. Unemployment Compensation Board of Review*, 957 A.2d 811 (Pa.Cmwlth.2008) (stating that a claimant need not indefinitely subject herself to abusive conduct). Moreover, whether an employer's conduct is abusive is a question of fact, and the majority acknowledges that the "Board credited Claimant's testimony that she was 'verbally abused' by [Employer]." (Majority op. at 1288.)

Accordingly, I would affirm.