IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kristine Lerie,                          :
                                         :
                    Petitioner           :
                                         :
            v.                           : No. 1663 C.D. 2016
                                         : Submitted: March 10, 2017
                                         :
Unemployment Compensation                :
Board of Review,                         :
                                         :
                    Respondent           :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: June 28, 2017


            Kristine Lerie (Claimant) petitions *pro se* for review of the June 22,
2016 order of the Unemployment Compensation Board of Review (Board), which
affirmed a referee's determination and held that Claimant was ineligible for
unemployment compensation benefits under Section 402(b) of the Unemployment
Compensation Law (Law).[1]  We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.
§802(b).  Section 402(b) provides that an employee shall be ineligible for compensation for any
week in which her unemployment is due to voluntarily leaving work without cause of a
necessitous and compelling nature.

Claimant worked as a nurse's aide for The Community at Holy Family Manor (Employer), a personal care home, from August 25, 2015, until December 21, 2015, at a final rate of $10.75 per hour. The Duquesne Local Service Center found that Claimant voluntarily quit her employment without a necessitous and compelling reason and was ineligible for benefits under Section 402(b). Claimant appealed.

A referee held a hearing on February 29, 2016, and affirmed the local service center's denial of benefits under Section 402(b). Claimant appealed to the Board, which determined that the referee had made statements that "evidenced predisposition of the case and lack of impartiality." Board Order of April 4, 2016. Accordingly, the Board vacated the referee's decision and remanded the case for a *de novo* hearing before a new referee.

The second hearing before a referee took place on May 2, 2016, and both parties appeared without counsel. Claimant testified that the incident which led to her separation occurred on the night of December 15, 2015, when she was assigned to monitor 27 residents on the third floor. Claimant stated that a med tech on his way out informed her that she would be working alone that night. Claimant said that she telephoned another med tech for assistance, but he kept hanging up on her. Notes of Testimony (N.T.), May 2, 2016, at 6.

Claimant testified that she then emailed administrator Melissa Armienta to report this staffing shortage. Claimant stated in her email that she had already worked alone on the third floor on three occasions, and did not wish to do so for a fourth time. Claimant further testified that she was especially concerned about the residents' safety after a recently held fire drill at the facility and believed

that it would have been very dangerous to have only one staffer responsible for 27 residents in an emergency. *Id*. at 6, 16.

Claimant stated that the next day she had a meeting with Ann Restaine, Employer's Director of Human Resources at the time, during which Claimant gave her version of the previous night's incident and reiterated her concerns about staff-to-patient ratios. She described this meeting as positive and perceived Restaine to be in complete agreement that Claimant had acted appropriately in emailing Armienta to secure more staffing for the third floor. *Id*.

Claimant stated that Employer placed her on suspension and commenced a "so-called investigation" into the events of December 15, 2015. *Id*. at 17. Thereafter, Employer issued a written warning (Formal Warning) reprimanding Claimant for her actions that night. Claimant said that she felt improperly "penalized because I did the appropriate thing." *Id*. Claimant further stated that the Formal Warning listed several corrective measures that she would have to take to remain an employee in good standing. Claimant testified that she signed the Formal Warning but then immediately turned in her credentials and resigned her position, stating that she "felt forced to quit" because the Formal Warning criticized her actions from December 15, 2015, and seemingly dismissed her efforts to expose safety issues in the workplace. *Id*. at 16.

In rebuttal, Armienta testified that she received Claimant's emails concerning the lack of a second staffer on the third floor at approximately 12:05 a.m. on December 16, 2015, and promptly acted to remedy the situation. Armienta further testified that even after the initial staffing shortage had been addressed, Claimant's emails continued and assumed a tone that was increasingly critical of

3

Employer.[2]  Armienta added that Claimant's behavior and reports of additional employee misconduct prompted her to suspend Claimant from work pending the results of an internal investigation.  *Id*. at 20, 21, 23.

Armienta further testified that the investigation revealed that Claimant had displayed inappropriate behavior that night, including the email exchanges and verbal arguments with other employees over the walkie–talkie system.  Armienta said she met with Claimant on December 21, 2015, to discuss the results of the investigation, issue the Formal Warning, place Claimant on a new probationary period, and reassign Claimant to another floor with fewer residents.  Armienta stated that Claimant signed the document, restated her version of events, and promptly quit her job.  *Id*. at 23- 26.

By decision and order dated May 4, 2016, the referee concluded that Claimant had not met her burden to demonstrate a necessitous and compelling reason to voluntarily quit her job, and affirmed the local service center's determination that Claimant was ineligible for benefits under Section 402(b).  The referee also found that Claimant had received $638.00 in benefits that she was not entitled to, resulting in a non-fault overpayment under Section 804(b).[3]

---

[2] For example, in emails sent to Armienta between 11:47 p.m. on December 15, 2015, and 1:15 a.m. on December 16, 2015, Claimant asked "does anybody care[?]" and "Is there anyone of authority who knows what's exceptible (sic) in the work environment[?]" Employer's Remand Exhibit 3.

[3] 43 P.S. §874(b).  Section 804(b) provides, in relevant part:

> Any person who other than by reason of his fault has received with respect to a benefit year any sum as compensation under this act to which he was not entitled shall not be liable to repay such sum but shall be liable to have such sum deducted from any future compensation

**(Footnote continued on next page…)**

4

Claimant appealed to the Board, which affirmed the referee's decision. The Board found that Claimant quit her job because she was offended and dissatisfied when Employer reprimanded her for her conduct on December 15-16, 2015, but that she did not establish that the reprimand constituted an intolerable work atmosphere. Although the Board credited Claimant's testimony that short-staffing made her concerned about residents' well-being, the Board found that Employer remedied that situation and attempted to reassign Claimant to another floor with fewer residents. The Board also determined that Claimant had not made reasonable efforts to maintain the employment relationship and did not establish that she had no alternative but to quit. Thus, the Board concluded that Claimant was ineligible for benefits under Section 402(b) and had a non-fault overpayment under Section 804(b).

On appeal to this Court,[4] Claimant argues that she should not be penalized for Employer's habitual staffing problems. Claimant also maintains that

---

**(continued…)**

> payable to him with respect to such benefit year, or the three-year period immediately following such benefit year.

[4] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Kirkwood v. Unemployment Compensation Board of Review*, 525 A.2d 841, 843-44 (Pa. Cmwlth. 1987). Additionally, the Board is the factfinder in unemployment compensation cases, empowered to determine the credibility of witnesses and resolve conflicts in evidence. *Curran v. Unemployment Compensation Board of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000). The Board's findings are binding and conclusive upon appeal if the record, when examined as a whole, contains substantial evidence to support them. *Mathis v. Unemployment Compensation Board of Review*, 64 A.3d 293, 299 (Pa. Cmwlth. 2013). "Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). We view the record in the light most favorable to the party prevailing before the Board and afford that party the benefit of all reasonable inferences that can

**(Footnote continued on next page…)**

5

she was a dedicated employee who followed all proper procedures but was forced to sign a Final Warning that she did not agree with. Accordingly, Claimant argues that she had a necessitous and compelling reason to leave her employment.[5]

Under Section 402(b) of the Law, a person is ineligible for unemployment benefits if she voluntarily terminates her employment without cause of a necessitous and compelling nature. The burden of proof rests on the claimant to demonstrate such a cause. *Dopson v. Unemployment Compensation Board of Review*, 983 A.2d 1282, 1284 (Pa. Cmwlth. 2009). To establish necessitous and compelling cause, a claimant must prove: "(1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve her employment." *Elliott Company, Inc. v. Unemployment Compensation Board of Review*, 29 A.3d 881, 886 (Pa. Cmwlth. 2011) (quoting *Brunswick Hotel & Conference Center, LLC v. Unemployment Compensation Board of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006)). Whether a claimant had a necessitous and compelling reason to voluntarily quit employment is a question of law subject to this Court's review. *Middletown Township v. Unemployment Compensation Board of Review*, 40 A.3d 217, 227 (Pa. Cmwlth. 2012).

---

**(continued…)**

be drawn from the evidence to determine if substantial evidence exists. *Big Mountain Imaging v. Unemployment Compensation Board of Review*, 48 A.3d 492, 494-95 (Pa. Cmwlth. 2012).

[5] Claimant has not challenged the Board's determination of a non-fault overpayment on appeal, and therefore it will not be addressed in this opinion.

Our precedent holds that "resentment of a reprimand, absent unjust accusations, profane language or abusive conduct…and personality conflicts, absent an intolerable working atmosphere . . . do not amount to necessitous and compelling cause." *Ann Kearney Astolfi DMD PC v. Unemployment Compensation Board of Review*, 995 A.2d 1286, 1289 (Pa. Cmwlth. 2010) (quoting *Lynn v. Unemployment Compensation Board of Review*, 427 A.2d 736, 737 (Pa. Cmwlth. 1981)). It is also well-settled that a claimant's mere dissatisfaction with working conditions is not a necessitous and compelling cause for quitting a job. *Brunswick Hotel & Conference Ctr.*, 906 A.2d at 660 (citing *McKeown v. Unemployment Compensation Board of Review*, 442 A.2d 1257, 1258 (Pa. Cmwlth. 1982)). Here, the Board found that Claimant quit her employment because Employer disciplined her and she failed to demonstrate an intolerable work atmosphere based on Employer's written reprimand. Citing Employer's efforts to alleviate Claimant's concerns, the Board also found that Claimant failed to establish that the staffing shortage was a necessitous and compelling reason to quit or that she made a reasonable effort to maintain her employment. Based on these findings, the Board correctly concluded that Claimant failed to meet her burden of proof under Section 402(b).

Accordingly, we affirm the Board's order.

MICHAEL H. WOJCIK, Judge

7

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kristine Lerie,             :

                              :

             Petitioner    :

                              :

          v.             :  No. 1663 C.D. 2016

                              :

                              :

Unemployment Compensation   :

Board of Review,           :

                              :

            Respondent :

## O R D E R

AND NOW, this <u>28</u><sup>th</sup> day of <u>June</u>, 2017, the order of the Unemployment Compensation Board of Review, dated June 22, 2016, is hereby AFFIRMED.

 

                                      _____

                                      MICHAEL H. WOJCIK, Judge