# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Landing, Inc., : 
               Petitioner : 
                : 
           v. : No. 313 C.D. 2017
                : Submitted: October 6, 2017
Unemployment Compensation Board : 
of Review, : 
               Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE J. WESLEY OLER, JR., Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT               FILED: January 5, 2018

       Landing, Inc. (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board) granting Jeannie Eleftherion (Claimant) benefits under the Unemployment Compensation Law (Law).[1]  The Board affirmed the determination of the Referee that Claimant had cause of a necessitous and compelling nature to leave her job and, thus, was not ineligible for benefits under Section 402(b) of the Law.[2]  Employer argues that Claimant did not establish sufficient cause to leave her employment.  We affirm the Board.

---

[1] Act of December 5, 1936, Second Ex Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§751-918.10.

[2] Section 402(b) of the Law states that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature[.]" 43 P.S. §802(b).

Employer runs a business known as "Fred's Breakfast Membership Club" in New Hope, Pennsylvania that is owned by Chris Bollenbacher (Owner). Notes of Testimony, 11/14/2016, at 1 (N.T. __); Reproduced Record at 2 (R.R. ___). Claimant worked there full-time as a waitress, earning $2.84 per hour, plus tips, from 2010 through September 6, 2016. Claimant resigned because she was "no longer able to emotionally handle the toxic, hostile environment [at work]." Certified Record (C.R.), Item No. 3 at 13.

Claimant applied for unemployment benefits, asserting that she left her employment due to sexual harassment. In her application, Claimant stated that on August 18, 2016, she filed a sexual harassment and discrimination claim with the Equal Employment Opportunity Commission (EEOC). At that point, the work atmosphere began to decline to the point that her doctor advised her to quit to relieve her anxiety and depression. The UC Service Center denied her application for the stated reason that Claimant did not establish a necessitious and compelling reason for quitting. Claimant appealed, and a hearing was held before a Referee.

Claimant testified that she quit because the workplace environment was not a healthy one. It caused her to suffer headaches, loss of sleep and loss of appetite. Claimant's physician prescribed anxiety medication and recommended that she resign.

Claimant explained that her work difficulties started in 2014, approximately two years before she quit, when a new waitress (New Waitress) was hired. After several customers complained to Claimant about New Waitress' attire, Claimant raised the issue with Owner. He responded that there was nothing wrong with New Waitress' attire and he liked looking at her breasts. N.T. 7; R.R. 8.

2

Thereafter, in August 2016 Claimant overheard a risqué conversation between New Waitress and Owner. New Waitress said that someone had burned the bread she had placed in the toaster, to which Owner replied that he only touched his own toast and no one had been playing with his toast lately. Claimant found this conversation uncomfortable and confronted Owner about it after work. Claimant also complained about New Waitress grabbing Owner's buttocks on occasion. Claimant told Owner that she was troubled by New Waitress' comment to customers that she and Owner were going to get a massage together after work and wondered if the massage would have a "happy ending." N.T. 10; R.R. 11.

Claimant testified that no one had ever made any sexual comments toward her or touched her improperly. She also agreed that Owner never grabbed anyone's buttocks. However, she had observed Owner and New Waitress in the "back room" kissing and hugging. N.T. 12; R.R. 13.

Employer presented the testimony of Owner. He stated that Claimant was a habitual complainer. Over the years, she complained about other employees and schemed to get rid of co-workers she did not like. He confirmed that Claimant complained about New Waitress' attire, which were low cut t-shirts. However, he found that the attire was fine. Owner denied making a comment about New Waitress' breasts.

He claimed the toast conversation was innocent. Owner explained there is a recurring problem with one server putting bread in the toaster and another server removing it after it is toasted. Owner responded by giving each server a separate toast container. Owner does not make or handle toast that is served to customers.

Owner stated he was present for, but not a participant in, New Waitress' conversation with customers about Owner and New Waitress getting a massage at a

3

reputable spa close to work. In his view, New Waitress likes to joke, and the customers laughed. It only offended Claimant because everything New Waitress does offends Claimant.

Owner confirmed that New Waitress slaps people on the behind. At work "20-something-year olds do it to each other all day long. I'm the only old guy, I think, that's getting slapped." N.T. 14; R.R. 15. However, Owner never touches the employees.

Employer submitted e-mail correspondence between Claimant and Owner dated August 15, 2016. Claimant's e-mail message states:

> I wanted to recap our conversation in the parking lot last week when I expressed to you my discomfort in the unacceptable language and behavior that has been taking place at [work]. A few examples are:
>
> - [New Waitress] talking loudly about the massages you are going to have and will they come with a "happy ending" in front of myself and the customers
>
> - [New Waitress] grabbing your rear in front of myself and customers
>
> - Talk about only touching one's own "toast"
>
> There has also been discussion in the past regarding [New Waitress'] inappropriate attire; however, you find it acceptable because you said you enjoy looking at her breasts.
>
> During my seven-year tenure [my] duties have included management, hostess and waitressing. I have been a team player and accepted additional responsibility without question or training so you could be out of the restaurant with your ailing wife. After my dedication and work record, I do not believe that correct solution should be for me to leave because [New Waitress] is out of control and rude. The discrimination and sexual harassment that has been taking place over the last two years because of your "relationship" with [New Waitress] needs to be resolved. Her disrespect and rudeness towards me in

4

addition to the total lack of staff support is unacceptable, and I find myself in a hostile environment.

Certified Record (C.R.), Item No. 3 at 5. Owner responded as follows:

I appreciate all your efforts while Ellen was in hospice. You and the entire staff stepped up and I am grateful to everyone. You were hired as a hostess/waitress and you have done a fine job. Any other responsibilities that you accepted I assume was because you were willing. [New Waitress] is outspoken and a bit brazen. I understand that this is unacceptable to you. We did go to a spa together because we are friends and each had a massage in separate rooms. It was at Nurture spa [ ] which is a reputable institution. They do not offer happy endings. I am sorry that you are offended by her sense of humor. You are not being sexually harassed. If anyone chooses to slap my behind that is my problem not yours. She has done this to other people as well. She thinks it is funny. Some of the recipients also thought it was funny. I believe she has never touched you. No one is touching you. No one has ever to my knowledge made a sexual comment to you.

Regarding [New Waitress'] attire, we do not require a uniform. We do not have a dress code. I have never said that I like her breasts. I have said that her attire is not offensive to me and I think that she looks fine. I think that if you bothered to look you would find that many of our bus girls wear ripped pants, butt shorts, and excessively tight yoga pants, so tight in fact that male customers often express their appreciation. I have never received a comment about [New Waitress'] dress [from anyone] other than you and Brad [(Owner's stepson)]. Until we choose to have a dress code, the dress of the other girls is none of your concern. Everyone who works [for Employer] is dedicated and has a good work record. You are not special in this regard. You are not guaranteed an environment of your desire…. The problem here is that you are offended by [New Waitress]. I do not owe you an environment where you approve of your co-workers personalities. The hostile environment you believe exists is not one caused nor nurtured by management. You can document and complain and use words such as hostile and unacceptable all you wish and as I have told you before I am not a social director. [New Waitress'] attitude does not affect your ability to make money, does not affect your schedule or the policies under which

5

you work. There are about 100 employees at [work]. Some like [New Waitress], some like [New Waitress] a lot, some don't care for her. You cannot seem to get along with her and seem to feel that the continued beating you give me about her is going to force me to make her behave in a fashion in which you approve…. You are free to leave if you are unhappy. I feel this conversation is not going anywhere. You have made your point clear. I have made mine. I am asking you to drop this subject. This is not the first time I have asked you to drop it but since it is now in writing it will be considered the first. As you continue to bring this subject up I will write to you two more times asking you to drop this subject. Then I will ask you to leave my employment.

C.R., Item No. 3 at 6.

The Referee found Claimant credible and resolved all conflicts with Owner's testimony in her favor. The Referee concluded that during the last several months of Claimant's employment, Employer allowed vulgar jokes and remarks in the workplace in front of Claimant and customers who complained to Claimant. Even though Claimant brought these matters to the attention of Owner, he refused to take any action. The Referee found that the offensive workplace conduct gave Claimant a necessitous and compelling reason to leave employment and granted Claimant benefits. Employer appealed to the Board, which adopted the Referee's findings and conclusions. The Board affirmed without further opinion.

Employer petitioned for this Court's review, arguing that Claimant did not meet her burden of proving there was a necessitous and compelling cause for quitting.[3] Employer contends that Claimant was not sexually harassed, and she did not act reasonably in quitting.

---

[3] "Our standard of review is limited to determining whether the Board's adjudication is in violation of constitutional rights, whether an error of law has been committed, or whether the factual findings are supported by substantial evidence." *Brunswick Hotel & Conference Center, LLC v. Unemployment Compensation Board of Review*, 906 A.2d 657, 660 n.2 (Pa. Cmwlth. 2006).

In support, Employer argues that cleavage is not offensive to an ordinary person. Likewise, an ordinary person would not quit because a co-worker is consensually grabbing someone else's behind. Nor would an ordinary person quit after hearing off-color discussions that were not directed toward her.

The Board responds that it did not find that Claimant was sexually harassed. Rather, it found that offensive conduct in the workplace gave Claimant a necessitous and compelling cause for terminating her employment.

We begin with a review of the law. It is well settled that a

> [n]ecessitous and compelling cause for voluntarily leaving employment [is one that] results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner.

*Mercy Hospital of Pittsburgh v. Unemployment Compensation Board of Review*, 654 A.2d 264, 266 (Pa. Cmwlth. 1995). We have offered the following guidelines for distinguishing normal workplace strains from pressures that justify a resignation:

> Resentment of a reprimand, absent unjust accusations, profane language or abusive conduct ...; mere disappointment with wages ...; and personality conflicts, absent an intolerable working atmosphere ... do not amount to necessitous and compelling causes.

*Ann Kearney Astolfi DMD PC v. Unemployment Compensation Board of Review*, 995 A.2d 1286, 1289 (Pa. Cmwlth. 2010) (quoting *Lynn v. Unemployment Compensation Board of Review*, 427 A.2d 736, 737 (Pa. Cmwlth. 1981)). "Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review." *Ann Kearney Astolfi*, 995 A.2d at 1289. When determining questions of law, our standard of review is *de novo* and

7

our scope of review is plenary. *Quality Care Options v. Unemployment Compensation Board of Review*, 57 A.3d 655, 660 (Pa. Cmwlth. 2012).

Claimant's testimony, which the Board credited, was that (1) when Claimant complained about New Waitress' attire, Owner responded that he liked looking at breasts; (2) Claimant had to listen to a conversation about toast that was full of sexual double entendres; (3) Claimant saw New Waitress grab Owner's buttocks; and (4) customers who witnessed the off-color comments complained to Claimant. The Board concluded that on these facts, Claimant established a demeaning workplace environment that justified her resignation.

Workplace racial slurs, insults, and harassment will give an employee a necessitous and compelling reason to terminate employment. *See, e.g., Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829 (Pa. 1977) (employee had necessitous and compelling reason to quit after employer repeatedly called him racially derogatory names); *Mercy Hospital of Pittsburgh*, 654 A.2d at 266 (employee had necessitous and compelling reason to quit after his co-workers repeatedly called him "faggot," "alcoholic," and "crazy" and employer was given an opportunity to fix the problem); and *Danner v. Unemployment Compensation Board of Review*, 443 A.2d 1211, 1212 (Pa. Cmwlth. 1982) (employee had necessitous and compelling cause to quit after employer failed to address employee's complaints of verbal abuse and harassment by co-workers). On the other hand, a merely "uncomfortable" workplace is not the same as an "intolerable" one and does not establish a compelling reason to quit. *Ann Kearney Astolfi*, 995 A.2d at 1290 (personality conflict with a co-worker and being chastised for crying and acting like a child by the boss made for an "uncomfortable," but not "intolerable" work environment).

8

The Board concluded that Claimant demonstrated an intolerable work environment. She complained to Owner, who did not address her concerns. This is a close case, but we cannot say that the Board abused its discretion in holding that Claimant established a necessitous and compelling reason to resign. Accordingly, we affirm.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Landing, Inc.,                                  :
               Petitioner                :
                                 :
           v.                          :     No. 313 C.D. 2017
                                 :
Unemployment Compensation Board   :
of Review,                                      :
               Respondent              :

## **O R D E R**

AND NOW, this 5th day of January, 2018, the order of the Unemployment Compensation Board of Review, dated February 21, 2017, in the above-captioned matter is hereby AFFIRMED.

                                 _____

                                 MARY HANNAH LEAVITT, President Judge