IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wouch Maloney & Co. LLP,      :
             Petitioner     :
                     :
         v.         :     No. 487 C.D. 2025
                     :
Unemployment Compensation   :     Argued: May 12, 2026
Board of Review,          :
             Respondent   :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE MATTHEW S. WOLF, Judge

**_OPINION NOT REPORTED_**

MEMORANDUM OPINION
BY JUDGE McCULLOUGH            FILED: June 10, 2026

       Wouch Maloney & Co. LLP (Employer) petitions for review of an order
of the Unemployment Compensation Board of Review (Board), which determined that
Angela Chakiris (Claimant) established a necessitous and compelling reason for her
voluntary resignation and awarded her benefits pursuant to Section 402(b) of the
Unemployment Compensation Law (Law).[1]  Upon careful review, we reverse the
Board's order.

       Employer is an accounting firm.  Claimant worked full-time for Employer
as the Firm Administrator from November 21, 2022, to May 7, 2024, when Claimant
tendered her resignation from employment.  Claimant filed an application for
unemployment compensation (UC) benefits, indicating she quit because she "would
get ignored, spoken down to and was accused of not doing something for the owner[']s

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

son, which he yelled at [her] about, however, the son never asked for help. He also used profanity when yelling at [her]." (Certified Record (C.R.) at 19.) A UC Service Center issued a determination that Claimant sustained her burden under Section 402(b). That section provides that, if voluntarily quitting a job, the claimant must show that such a voluntary termination was done for a necessitous and compelling reason. Employer appealed to the Referee.

At the hearing, Claimant testified that she left her employment because she "felt like it was a hostile environment." *Id.* at 106. She explained that her boss, John Maloney, the Managing Partner of Employer, ignored that it was her birthday, disregarded her complaint that another employee had said something insensitive to her, would not look up from his computer when she came into his office to talk to him, and hurt her feelings when she said she had to take time off and he did not respond. *Id.* at 106-09. Additionally, she testified that when Mr. Maloney asked her to remove his son from the Employer's health insurance plan mid-plan period and enroll him in another plan with better benefits, she told him that "she didn't think that was right," and that she "didn't want to be a part of that." *Id.* at 108. When asked what reason she gave Employer for her resignation, Claimant explained that

> I really didn't give a full explanation other than I told them I was resigning effective that day and wanted to express my gratitude to them and the opportunities for the professional and personal development, which I got there, and that I enjoyed the time with the team and was thankful for the opportunity. And I said to ensure a smooth transition, I'm committed to completing any outstanding tasks and assisting with the training of my replacement. Please let me know how I can best support this process during my remaining time with the company. I'm grateful for the experiences and relationships I've gained while I was there, and I wish the organization continued success.

2

*Id.* at 105.

When asked to explain when Mr. Maloney used profanity towards her, Claimant testified that, after she had turned in her resignation, he came to her office door and started yelling "are your f'ing kidding me or is this f'ing what you're doing." *Id.* at 111.

Mr. Maloney testified next. He did not recall ignoring Claimant on her birthday. He denied using profanity toward her. He stated that Claimant "might [have] communicate[d] to [him] what other people may or may not have said to her." *Id.* at 113. However, "[n]othing dramatic [stood] out in [his] mind." *Id.* With respect to the health insurance issue, Mr. Maloney wanted to clarify the implication that the firm was doing something that it was not allowed to do. *Id.* at 114. He explained that the firm was getting close to the renewal period, his son had a medical issue that was not covered, and he asked Claimant for assistance. When she failed to assist him, the son communicated directly with their insurance broker who was able to resolve the situation. *Id.*

Following the hearing, the Referee issued a decision denying Claimant benefits and reversing the UC Service Center's determination. The Referee found that Claimant "did not provide [E]mployer with a reason for her resignation," and that "[h]ad [C]laimant not voluntarily quit her employment, continued work was available." (Referee's Findings of Fact (FOF) ¶¶4-5.) The Referee reasoned:

> the competent evidence contained in the hearing record establishes that [C]laimant voluntarily separated from employment. [C]laimant testified that she felt ignored by the Firm's Partner who would not look at her. [C]laimant testified that she did not tell [E]mployer that she was working in a hostile environment. That fact alone prohibits [C]laimant from being eligible for benefits. The competent evidence contained in the hearing record establishes [C]laimant did not

3

communicate her concern to [E]mployer to allow them to alleviate the problem. As such, the Referee concludes [C]laimant did not exhibit good faith in leaving her employment. Therefore, [C]laimant has failed to meet her burden of proof under Section 402(b) of the Law. . . .

(Referee's Decision, at 2.)

Claimant then filed a timely appeal to the Board. The Board issued an order, dated March 17, 2025, in which it made the following findings of fact:

1. [C]laimant was last employed as a full-time Firm Administrator by Wouch Maloney & Co LLP, from August 1, 2021, at a final rate of $101,000 per year. Her last day of work was May 7, 2024.

2. In March 2024, [C]laimant notified [E]mployer (specifically, the managing partner) that the director of marketing had said some "pretty heinous" things to her after [C]laimant had expressed condolences to the director of marketing about her boyfriend's mother passing away.

3. The director of marketing said something along the lines of, "You f***ing grievers. It's just ridiculous. He [the boyfriend] should just go get help, and I can't stand people that are grieving."

4. [C]laimant was extremely hurt by these statements, because she had lost several family members within the last three years.

5. When [C]laimant told the managing partner about the incident, the managing partner did not take the incident seriously.

6. There were multiple other instances where the managing partner ignored [C]laimant when she came into his office, even refusing to look at her.

4

7. On one occasion, the managing partner did not wish her a "Happy Birthday" when he learned it was her birthday.

8. Another incident occurred in middle or end of April of 2024.

9. One of [C]laimant's job responsibilities was managing the enrollment of employees and their dependents in the employer's health insurance plan.

10. The managing partner asked her to help him enroll his son in a different health insurance. [C]laimant felt that being asked to do so was unethical because you normally could only switch the medical plan during renewal/open enrollment time.

11. [C]laimant felt she could not speak to the managing partner about this issue because of being ignored and being yelled at.

12. The managing partner enrolled the son in the new plan.

13. When [C]laimant submitted her resignation, the managing partner yelled at her and said statements along the lines of, "Are you f***ing kidding me?"

14. Those statements could be heard by everyone in the administrative/reception area.

15. [C]laimant resigned on May 7, 2024, to leave her intolerable work atmosphere.

(Board's Decision, 3/17/25, Findings of Fact (FOF) 1-15.)

Based on these findings of fact, the Board concluded that

[C]laimant has met her burden under 402(b) of the Law. The Board resolves all conflicting testimony in favor of [C]laimant. [C]laimant credibly testified that her work environment was growing intolerable due to **her boss's coldness to her** and **his refusal to take action regarding**

5

**the complaint she had against another coworker**. [C]laimant also explained that **she was being asked to engage in what she believed to be inappropriate behavior** when the managing partner told her to enroll his son in a different insurance plan mid-plan, when she believed that could only happen during open enrollment. **[C]laimant also testified that when she submitted her resignation, the managing partner yelled and cursed at her**, which confirms the inappropriate work behavior she was forced to endure. The Board finds that [C]laimant was not required to indefinitely subject herself to abusive conduct, and it would have been futile for her to complain further, as the problems were with the managing partner of the firm. Therefore, as [C]laimant has demonstrated that her intolerable work environment was a necessitous and compelling reason for her to quit, [C]laimant has met her burden under 402(b), and therefore benefits are granted.

(Board's Decision, at 2) (emphasis added).

Employer petitioned this Court for review of the Board's order.[2] Employer contends that the facts, as found by the Board, do not support a finding of a necessitous and compelling reason for Claimant's voluntary resignation. We agree.

Pursuant to Section 402(b) of the Law, an employee is ineligible for benefits if she voluntarily terminates her employment without cause of a necessitous and compelling nature. 43 P.S. § 802(b). Thus, a claimant seeking benefits after voluntarily quitting her job has the burden to demonstrate real and substantial pressure to terminate employment that would compel a reasonable person under similar circumstances to act in the same manner. *Dopson v. Unemployment Compensation Board of Review*, 983 A.2d 1282, 1284 (Pa. Cmwlth. 2009). The claimant must further

---

[2] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

demonstrate that she acted with ordinary common sense and made a reasonable effort to preserve her employment. *First Federal Savings Bank v. Unemployment Compensation Board of Review*, 957 A.2d 811, 816 (Pa. Cmwlth. 2008). More specifically, the claimant "must take common sense action to obviate the problem so that . . . she does not have to terminate employment, and this is accomplished by informing one's superiors of the harassing, humiliating or abusive conduct." *Porco v. Unemployment Compensation Board of Review*, 828 A.2d 426, 428 (Pa. Cmwlth. 2003). Whether an employee has a necessitous and compelling reason to voluntarily quit employment is a question of law fully reviewable by this Court. *Willet v. Unemployment Compensation Board of Review*, 429 A.2d 1282, 1284 (Pa. Cmwlth. 1981).

This Court has held that mere resentment of a reprimand, disappointment with wages and personality conflicts do not constitute a necessitous and compelling cause to voluntarily quit. *Lynn v. Unemployment Compensation Board of Review*, 427 A.2d 736, 737 (Pa. Cmwlth. 1981). Our case law has also distinguished "normal workplace strains" from "pressures extreme enough to justify a resignation." *Ann Kearney Astolfi DMD PC v. Unemployment Compensation Board of Review* (*Astolfi*), 995 A.2d 1286, 1289 (Pa. Cmwlth. 2009). However, it is well established that "a claimant need not indefinitely subject herself to unjust accusations and abusive conduct." *Berardi v. Unemployment Compensation Board of Review*, 458 A.2d 668, 670 (Pa. Cmwlth. 1983). Accordingly, this Court has also held that a claimant may demonstrate a necessitous and compelling cause to quit when the claimant is continuously subjected to unjust accusations or abusive conduct, *Whisner v. Unemployment Compensation Board of Review*, 446 A.2d 336, 338 (Pa. Cmwlth. 1982), or where the relationship with a supervisor or co-worker has deteriorated to the

7

point where working conditions are intolerable, *Karloff v. Unemployment Compensation Board of Review*, 531 A.2d 582, 854 (Pa. Cmwlth. 1987).

This Court has recognized that "abusive conduct" may constitute a necessitous and compelling reason to voluntarily quit where it includes being called names or being subject to criticism and ridicule from a superior that was uncalled for and incorrect. In *First Federal Savings Bank v. Unemployment Compensation Board of Review*, 957 A.2d 811 (Pa. Cmwlth. 2008), relied upon by the Board, the claimant worked as a vice president who chaired committee meetings. During the meetings, a senior vice president was generally "disruptive, defiant, argumentative and also engaged in outbursts." *Id.* at 814. The senior vice president was "disrespectful toward [the claimant] in that in front of other employees he told her that she did not know what she was doing and that she shrugged responsibilities." *Id.* After the claimant discussed these problems with senior management, she eventually had a meeting with the employer's president. At this meeting, the president "attacked [the claimant's] leadership skills and competency, and referred to the [claimant's previous] management team . . . as criminals." *Id.* The president also "subjected [the claimant] to discipline but refused to permit [the claimant] to respond, kept yelling at [the claimant], and told [the claimant] to leave his office." *Id.* Thereafter, the claimant voluntarily quit.

Crediting the above facts, the Board in *First Federal* determined that the president unjustly reprimanded the claimant with abusive language; the claimant was unable to respond to the discipline imposed by the president; and the senior vice president subjected the claimant to unwarranted criticism and ridicule. The Board concluded that the claimant had voluntarily quit her employment for necessitous and compelling reasons. *Id.* On further appeal, this Court affirmed, stating:

8

[The claimant] demonstrated more than a mere belief of unjust accusation, as the Board concluded that [the claimant] was, in fact, unjustly reprimanded with abusive language and that [the claimant] was subjected to intolerable working conditions. The Board further determined that [the claimant] "could not respond to discipline and was subject to criticism and ridicule from a senior vice president that was uncalled for and incorrect." We agree with the Board's conclusion that such circumstances existed which produced real and substantial pressure for [the claimant] to terminate her employment and that a reasonable person in the same circumstances would have acted similarly.

*Id.* at 817 (citations omitted).

This Court distinguished *First Federal* in a case with facts similar to the acts in the instant case. In *Astolfi*, the claimant worked in a small dental office as a receptionist and surgical assistant. She quit her job and sought unemployment benefits, arguing that she had been subjected to verbal abuse by her superior. She testified that she worked in a chaotic environment, complained to her superior about a conflict between two other employees, and the superior told her to stop acting like "one of her children" and to "deal with it." *Astolfi*, 995 A.2d at 1287. The claimant further testified that on one occasion, the superior told her to "shape up" or she would be terminated and, when she began to cry, the dentist stated that it was a sign of immaturity. Finally, the claimant testified that the superior yelled at her for speaking too long to a patient and told her that she talks "way too much." *Id.* On these facts, the Board concluded that the claimant had established a necessitous and compelling reason to quit.

On appeal, this Court reversed, concluding that the claimant's testimony was legally insufficient to demonstrate a necessitous and compelling cause. In reaching our decision in *Astolfi*, this Court distinguished *First Federal* on the basis that the claimant in *Astolfi* "was not publicly reprimanded or accused of being a criminal like her counterpart in *First Federal*." *Id.* at 1289. Noting that our case law distinguishes

between an uncomfortable workplace and an intolerable atmosphere, we further explained that the claimant

> was not subjected to the kinds of intolerable abusive language experienced by successful claimants in other voluntary quit cases. *See, e.g., Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829 ([Pa.] 1977) (African–American claimant subjected to repeated racial slurs and prejudicial treatment for three years); *Mercy Hospital of Pittsburgh*, 654 A.2d [264,] 266 [(Pa. Cmwlth. 1995)] (coworkers excessively taunted claimant with names such as "alcoholic," "faggot," and "crazy"); *Danner v. Unemployment Compensation Board of Review*, [] 443 A.2d 1211, 1213 n. 2 ([Pa. Cmwlth.]1982) (claimant testified that "a number of his fellow employees, including his foreman, had questioned him as to whether or not his girlfriend had had a sex change operation and that they often verbally abused him in an extremely derogatory manner and physically pushed him.").

*Astolfi*, 995 A.2d at 1289-90.

In the instant case, we find that Claimant's situation is analogous to that of the claimant in *Astolfi*. Even viewing the testimony in the light most favorable to Claimant as the prevailing party, *see Sipps v. Unemployment Compensation Board of Review*, 181 A.3d 479, 484 (Pa. Cmwlth. 2018), substantial evidence does not support the Board's finding that Claimant met her burden of demonstrating her working conditions were intolerable or that she made a reasonable effort to save her employment.

First, as in *Astolfi*, Claimant demonstrated, at most, that her work environment was uncomfortable. Claimant testified about what she perceived to be an abrupt and insensitive reaction by a coworker after Claimant expressed her condolences about her boyfriend's mother passing away. Claimant stated that the comment "hurt

10

her feelings." (C.R. at 106-09.) However, Claimant did not testify or provide any evidence that the coworker made the comment with the intention of hurting Claimant's feelings or that this coworker even knew that Claimant had lost family members within the last three years. By all accounts this was a one-time and relatively minor incident, and there was no other testimony that this same coworker, or any other coworker, had subjected Claimant to prolonged harassment or abuse. In *Taylor*, the Supreme Court held that an African-American employee had a "cause of a necessitous and compelling nature" for terminating his employment where the evidence established that he had suffered through three years of repeated incidents of racial prejudice and verbal abuse by his employer, his coworkers, and patrons of the restaurant where he worked. 378 A.2d at 834. In *Mercy Hospital of Pittsburgh*, this Court found that an employee had a necessitous and compelling reason to quit his employment where the evidence showed that his coworkers repeatedly taunted him with names such as "alcoholic," "faggot," and "crazy." 654 A.2d at 266. In *Danner*, we reversed the Board's conclusion that the claimant did not face an unbearable work environment where the evidence established that a number of the claimant's coworkers, including his foreman, on numerous occasions had questioned him as to whether or not his girlfriend had had a sex change operation and that they often verbally abused him in an extremely derogatory manner and physically pushed him. 443 A.2d at 1213 n.2. Here, unlike in *Taylor*, *Mercy Hospital*, and *Danner*, Claimant presented no evidence that she faced an unbearable work environment as the result of abuse by coworkers.

Further, as in *Astolfi*, Claimant's evidence of mistreatment by the Managing Partner was scant. She testified that the Managing Partner was cold to her, he did not wish her a "Happy Birthday," he did not maintain eye contact with her on one occasion when she went to his office, he did not take action regarding the complaint

11

she had against another coworker, and there was a disagreement of opinion with the Managing Partner regarding an insurance application. *See* Board's Decision, at 2. But this does not establish that the work environment was intolerable. For instance, in *Uniontown Newspapers, Inc. v. Unemployment Compensation Board of Review*, 558 A.2d 627, 628, 630 (Pa. Cmwlth. 1989), we concluded a claimant had necessitous and compelling reasons for quitting when the claimant's supervisor threw items at the claimant and screamed and pointed her finger at the claimant. And in *Willet v. Unemployment Compensation Board of Review*, 429 A.2d 1282, 1283-84 (Pa. Cmwlth. 1981), we concluded a claimant who was called a profane name, was repeatedly insulted about her intelligence, ridiculed for her physical appearance, and subjected to unsubstantiated job infractions by her supervisor, had a necessitous and compelling reason to voluntarily quit her job. There is no such evidence here.

To the contrary, and in stark contrast to *First Federal*, *Uniontown*, and *Willet*, Claimant did not demonstrate that she was subject to any profane, abusive or inappropriate language on the part of the Managing Partner that **contributed to her decision to resign**. Her testimony that the Managing Partner used profanity **after** being informed of Claimant's decision to resign relates to **post-employment** conduct and thus is not applicable to a necessitous and compelling reason to quit analysis. Accordingly, we conclude that the instant case is much more akin to *Astolfi* than it is to *First Federal* and that the Board's reliance on *First Federal* was misplaced.

Finally, we do not agree with the Board that the evidence established that Claimant made a reasonable effort to preserve her employment. In *Porco v. Unemployment Compensation Board of Review*, 828 A.2d 426, 429-30 (Pa. Cmwlth. 2003), the claimant quit his job due to his manager's abusive conduct and profanity. However, the claimant admittedly failed to speak to anyone in upper-level management

12

regarding his circumstances before quitting. We held that by failing to give his employer the opportunity to resolve the situation, the claimant failed to take reasonable steps to preserve his employment. Accordingly, we affirmed the Board's denial of benefits under Section 402(b).

Here, Claimant testified candidly that she did not give a full explanation of the reason she was resigning other than telling the Managing Partner that she was resigning. (C.R. at 105.) By her own account, the Managing Partner was greatly surprised by her decision. Upon the evidence and findings in this case, it cannot be said that Claimant acted with ordinary common sense in quitting or that she made a reasonable effort to preserve her employment or that she had no choice but to leave. Certainly, Claimant could have talked to the Managing Partner about why he was being cold to her or why he did not say "Happy Birthday" or given him an opportunity to resolve the situation.

Because Claimant did not establish an intolerable work environment, nor that she made a reasonable effort to preserve her employment, she failed to prove that she had a necessitous and compelling reason to quit.

The order of the Board is reversed.

_____
PATRICIA A. McCULLOUGH, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wouch Maloney & Co. LLP,    :
     Petitioner   :
              :
    v.       :  No. 487 C.D. 2025
              :
Unemployment Compensation  :
Board of Review,      :
     Respondent  :

## ***ORDER***

AND NOW, this 10th day of June, 2026, the order of the Unemployment Compensation Board of Review is hereby REVERSED.

_____
PATRICIA A. McCULLOUGH, Judge