# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lori Houseknecht,            :
           Petitioner      :
           :
           v.            :    No. 268 C.D. 2022
           :    Submitted: September 30, 2022
Unemployment Compensation    :
Board of Review,            :
           Respondent    :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
                   HONORABLE ANNE E. COVEY, Judge
                   HONORABLE LORI A. DUMAS, Judge

<u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED: April 18, 2023**

Lori Houseknecht (Claimant), pro se, petitions for review of the March 1, 2022 Order of the Unemployment Compensation (UC) Board of Review (Board), finding Claimant was ineligible for benefits pursuant to Section 402(b) of the UC Law (Law),[1] as she voluntarily quit her employment with Wyrope Williamsport Federal Credit Union (Employer) without cause of a necessitous and compelling nature. On appeal, Claimant argues the Board erred in failing to find Claimant was subject to abusive, hostile, or intolerable working conditions at the hands of Employer's Chief Executive Officer (CEO), to examine all of the evidence, and to find Claimant credible. Based upon the Board's findings of fact and a review of the record and relevant case law, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

# I.    BACKGROUND

Claimant began working for Employer as a full-time member service representative 2 on September 8, 2020.  On November 2, 2020, Claimant tendered a resignation letter stating, "Due to certain circumstances and the level of the working environment, this is my letter of resignation.  Effective today, I am submitting my two[-]week[s'] notice and my last day will be on November 19, 2020."  (Certified Record (C.R.) at 85.)  After working her final day for Employer, Claimant filed a claim for UC benefits.  (*Id.* at 7.)  A UC Service Center issued a Notice of Determination finding Claimant was ineligible under Section 402(b) of the Law.  (*Id.* at 21.)  Claimant filed a timely appeal, and a telephone hearing was scheduled before a Referee.

At the hearing, Claimant testified on her own behalf as follows.  Claimant quit due to "harassment in the work place" by CEO.  (C.R. at 53.)  Claimant described the workplace as an unprofessional work environment, which caused her to be prescribed anxiety medication.  (*Id.*)  Claimant testified, "I could have gotten my doctor involved in this, but at this time, I thought I would just provide the information."  (*Id.*)  Claimant acknowledged her doctor did not set any restrictions on her work.  (*Id.* at 54.)  Claimant testified other tellers seemed "timid" and "scared to do anything wrong" because of CEO.  (*Id.*)  Claimant described CEO as "very boisterous" if tellers did not answer the telephone within three rings.  (*Id.*)  Claimant explained that sometimes they were busy and could not answer within three rings.  (*Id.*)  At the time, the lobby was closed so there were more phone calls.  (*Id.*)  When asked by the Referee whether Claimant thought about answering and putting the caller on hold, Claimant responded that she did not think putting someone on hold was "normal" for the workplace, although Claimant acknowledged this is what CEO

instructed her to do. (*Id.* at 54-55.) Claimant testified that she did not understand why CEO did not answer the phone herself. (*Id.* at 55.) Claimant also described a "threatening" incident with CEO. (*Id.* at 54.) After a tube at the drive-through window was broken, CEO told employees that whoever broke the tube again would have to pay for repairs. (*Id.*) On cross-examination, Claimant acknowledged no one was ever charged for the tube. (*Id.* at 61-62.) Claimant also referred to an incident in which her drawer was allegedly $100 short, but it was the result of CEO signing onto the terminal and not signing back out. (*Id.* at 55-56.) It turned out the drawer was not short and no one was written up for the incident, but Claimant was upset that CEO "laughed [it] off." (*Id.* at 56.) Claimant also testified that it was "unprofessional" for CEO to talk about other employees in Claimant's presence. (*Id.* at 57.) In addition, Claimant stated CEO decided employees did not have to wear masks despite guidance to do so. (*Id.*) However, Claimant further testified that "it was nice that you didn't have to wear masks," and admitted on cross-examination that masks were provided for any employee who chose to wear one. (*Id.* at 57, 61.)

CEO testified for Employer, along with Vice President and another member service representative who supervised tellers (Teller Supervisor). CEO testified Claimant never approached her about feeling harassed or bullied, and continuing work was available with Employer had Claimant not voluntarily quit. (*Id.* at 64.) CEO admitted that she was "blunt" and "very curt" but stated she was "not unprofessional." (*Id.* ) Vice President testified that Claimant never expressed any concerns to her before quitting. (*Id*. at 65.) Vice President also explained Claimant was being considered for a management role, which is why she was involved in discussions about other employees. (*Id.* at 67.) Finally, Teller Supervisor testified she did not think any of the conversations about other tellers was unprofessional.

(*Id.* at 68.)  At one point during the hearing, when Claimant said she might call Teller Supervisor as a witness "down the road, if I have to take this to a different level," the Referee advised Claimant, "if this goes to the Board . . . , the Board . . . is only going to review what has been brought out in today's hearing . . . [s]o if [Claimant ha[d] questions, [Claimant] need[ed] to ask them."  (*Id.* at 68-69.)  On cross-examination, Teller Supervisor testified employees were told a couple times about the three-ring policy, "[b]ut it wasn't a threat."  (*Id.* at 69.)  In handwritten notes submitted as evidence before the Referee, as well as in her appeal from the UC Service Center's Notice of Determination, Claimant indicated that a member of Employer's Board of Directors asked Claimant why she quit, and she explained the situation.  (*Id.* at 30, 76.)  Also admitted as an exhibit was an email from Vice President to employees reminding them of the phone policy.  (*Id.* at 87.)

On June 2, 2021, the Referee issued a decision and order affirming the UC Service Center's Notice of Determination that Claimant was ineligible for benefits under Section 402(b) of the Law.  The Referee made the following relevant findings of fact:

> 2.  [] [C]laimant voluntarily left her employment with [Employer] due to an alleged hostile working environment.
>
> 3.  [] CEO/President stressed the importance of answering all phone call[s] within three rings to all employees . . . even if it meant putting the caller on hold.
>
> 4.  [] CEO/President made a joke/comment that the next person who broke the drive-in tube system would be paying for it, but she never actually charged anyone for this.
>
> 5. Members of management at [Employer] would openly discuss issues they had with employees in front of [] [C]laimant, as they were training her to become a manager.

6. Continuing work would have been available to [] [C]laimant had she not have voluntarily left her employment as she did.

(Referee's Decision, Findings of Fact (FOF) ¶¶ 2-6.)

The Referee reasoned that "personality conflict[s] with supervisors or co-workers or resentment of supervisory criticism is not necessitous and compelling cause to quit" under Pennsylvania law. (Referee's Decision at 2.) Rather, a claimant must show the employment situation is intolerable and that the claimant made a good faith effort to preserve employment. (*Id.*) Based upon the facts as found, the Referee concluded Claimant did not establish a necessitous and compelling reason for voluntarily quitting nor did Claimant "act[] with ordinary common sense and ma[k]e a good faith effort to preserve the employment." (*Id.*) Thus, benefits were denied (*Id.*)

Claimant subsequently appealed to the Board, which adopted and incorporated the Referee's findings and conclusions. (Board Order.) Claimant filed a timely Petition for Review with this Court.

## II.    PARTIES' ARGUMENTS

On appeal,[2] Claimant argues CEO created a hostile work environment by bullying, yelling, and talking down to employees. Instead of explaining something in a civil manner, Claimant asserts CEO would grow upset when the phone was not answered quickly. According to Claimant, this created stress and anxiety. Claimant also argues CEO did not require masks during COVID-19. Claimant contends she told UC officials that she had to seek psychological treatment as a result of the stress

---

[2] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014) (citation omitted).

and anxiety and asserts she submitted documentation to that effect to the Board. However, Claimant argues the Board failed to consider all of the evidence, including her medical records. Finally, Claimant asserts CEO has since resigned in lieu of being fired, which supports her claim that the work environment was hostile.

The Board responds that Claimant did not meet her burden of proving she had a necessitous and compelling reason for quitting. The Board maintains Claimant's issue with CEO was a personality conflict and not intolerable working conditions. The Board asserts the three-ring policy was reasonable, and there was no real or substantial pressure on Claimant to quit. The Board argues Claimant also did not inform Employer of any concerns, including in her resignation letter. While Claimant spoke to a member of Employer's Board of Directors and voiced her grievances there, the Board asserts this was after Claimant already quit, as Claimant admits the board member asked her why she quit. The Board claims we cannot consider evidence that CEO left, as that evidence is not of record. Similarly, the Board argues Claimant did not raise COVID-19 as an issue before the Board, but even if the issue was preserved, Claimant did not attempt to preserve her employment or seek accommodations. The Board further argues Claimant's physician did not place any work restrictions, and Claimant did not inform Employer of needing any accommodations. The Board asserts it did not capriciously disregard evidence as the documentation from Claimant's doctor was not presented to the Referee, which was necessary for it to become part of the record the Board reviewed. It also disputes that Claimant attempted to provide such documentation while Claimant's appeal to the Board was pending; rather, the Board claims the documentation was included in Claimant's Reproduced Record for the first time.

Finally, the Board states it is the factfinder and its credibility determinations are not subject to reevaluation by this Court.

## III.   DISCUSSION

Under Section 402(b) of the Law, "[a]n employe shall be ineligible for compensation for any week . . . [i]n which [the employe's] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature . . . ." 43 P.S. § 802(b).   Here, it is undisputed that Claimant voluntarily left her employment.   Thus, the burden is on Claimant to show that she had a necessitous and compelling reason to do so. *Latzy v. Unemployment Comp. Bd. of Rev.*, 487 A.2d 121, 123 (Pa. Cmwlth. 1985).   To satisfy this burden, Claimant must demonstrate that:   "(1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve [her] employment." *Brunswick Hotel & Conf. Ctr., LLC v. Unemployment Comp. Bd. of Rev.*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006).   Whether a claimant had necessitous and compelling reasons for terminating his employment is a question of law subject to review by this Court. *Wise v. Unemployment Comp. Bd. of Rev.*, 111 A.3d 1256, 1261 (Pa. Cmwlth. 2015).

"Mere dissatisfaction with one's working conditions does not constitute cause of a necessitous and compelling nature for terminating one's employment." *Brunswick Hotel*, 906 A.2d at 660.   Likewise, "[p]ersonality conflicts, absent an intolerable work atmosphere, do not amount to a necessitous and compelling cause for leaving one's employment." *Wert v. Unemployment Comp. Bd. of Rev.*, 41 A.3d

7

937, 940 (Pa. Cmwlth. 2012). Furthermore, "resentment of a reprimand, absent unjust accusations, profane language or abusive conduct . . . do not amount to necessitous and compelling causes." *Lynn v. Unemployment Comp. Bd. of Rev.*, 427 A.2d 736, 737 (Pa. Cmwlth. 1981). The Court has recognized that "abusive conduct" may constitute a necessitous and compelling reason to voluntarily quit. *Ann Kearney Astolfi, DMD, PC v. Unemployment Comp. Bd. of Rev.*, 995 A.2d 1286, 1290 (Pa. Cmwlth. 2010). This includes being called names or being "subject to criticism and ridicule from [a superior] that was uncalled for and incorrect." *First Fed. Sav. Bank v. Unemployment Comp. Bd. of Rev.*, 957 A.2d 811, 817 (Pa. Cmwlth. 2008).

The record here does not demonstrate the CEO's conduct "produced real and substantial pressure" such that a reasonable person would quit. *Brunswick Hotel*, 906 A.2d at 660. Employer reasonably instructed its employees to answer the phone within three rings and, if necessary, to place the caller on hold. Claimant testified CEO became "very boisterous" if the phone was not answered within three rings, (C.R. at 54), but this does not establish the work environment was intolerable. For instance, in *Uniontown Newspapers, Inc. v. Unemployment Compensation Board of Review*, 558 A.2d 627, 628, 630 (Pa. Cmwlth. 1989), we concluded a claimant had necessitous and compelling reasons for quitting when the claimant's supervisor threw items at the claimant and screamed and pointed her finger at the claimant. And in *Willet v. Unemployment Compensation Board of Review*, 429 A.2d 1282, 1283-84 (Pa. Cmwlth. 1981), we concluded a claimant who was called a profane name, was repeatedly insulted about her intelligence, ridiculed for her physical appearance, and subjected to unsubstantiated job infractions by her supervisor, had a necessitous and compelling reason to voluntarily quit her job. There is no such

8

evidence here. Claimant also asserts CEO threatened to make employees pay for breaking the drive-through tube but Claimant admits CEO never did so. (C.R. at 54, 61-62.) And while Claimant contends it was unprofessional for management to speak about other employees in front of her, Claimant was being trained as a manager. (*Id.* at 57, 67.) Even assuming a reasonable person would have felt "real and substantial pressure" to quit, Claimant took no steps to preserve her employment. *Brunswick Hotel*, 906 A.2d at 660.

Similarly, Claimant did not inform Employer of any medical conditions that constituted a necessitous and compelling reason to resign. To establish that a medical condition constituted a compelling reason to resign, a claimant must prove through competent and credible evidence that (1) the health reason is of sufficient dimension to compel the employee to quit; (2) the employee informed the employer of the health problem; and (3) the employee is able and available for work if the employer can make a reasonable accommodation. *Watkins v. Unemployment Comp. Bd. of Rev.*, 65 A.3d 999, 1004 (Pa. Cmwlth. 2013). As stated above, Claimant did not approach Employer seeking any reasonable accommodations for her anxiety and, instead, quit.

Claimant's argument about COVID-19 likewise does not entitle her to benefits. While Claimant argues in her brief that she felt uncomfortable by Employer's lack of a masking policy, (Claimant's Br. at 8), before the Referee, Claimant stated "it was nice that you didn't have to wear masks," and admitted on cross-examination that masks were provided for any employee who chose to wear one. (*Id.* at 57, 61.) Thus, this argument is unavailing. Nor is it evident from a review of the record that Claimant raised this issue to the Board. *See* Pa.R.A.P. 1551(a) ("Only questions raised before the government unit shall be heard or

9

considered, except" limited exceptions not applicable here.); *see also Hubbard v. Unemployment Comp. Bd. of Rev.*, 252 A.3d 1181, 1186 (Pa. Cmwlth. 2021) (holding same).

Turning to Claimant's next argument, that the Board failed to consider all of her evidence, including a letter from her doctor, we likewise find no error by the Board. The Board capriciously disregards the evidence, if it "willfully or deliberately ignored evidence that any reasonable person would have considered to be important." *Jackson v. Unemployment Comp. Bd. of Rev.*, 933 A.2d 155, 156 n.4 (Pa. Cmwlth. 2007) (citation omitted). The problem for Claimant here is that the letter was not admitted into evidence at the Referee's hearing, which would have enabled the Board to consider it. *See* Section 504 of the Law, 43 P.S. § 824 (providing the Board may affirm, modify, or reverse a referee's decision "on the basis of the evidence previously submitted in the case"); 34 Pa. Code § 101.106 (providing the Board "may review both the facts and the law pertinent to the issues involved on the basis of the evidence previously submitted"). Under precedent, "[t]he Board may not consider post-hearing factual communications in its determination, as the Board is restricted to the facts and the law pertinent to the issues involved on the basis of evidence previously submitted." *Croft v. Unemployment Comp. Bd. of Rev.*, 662 A.2d 24, 28 (Pa. Cmwlth. 1995). Thus, it did not err in not considering Claimant's letter from her doctor.

Finally, Claimant argues the Board should have found her credible. "[T]he [Board] is the ultimate fact-finder in [UC] matters . . . ." *Sipps v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 479, 484 (Pa. Cmwlth. 2018) (citation omitted). As the factfinder, it is entitled to make its own credibility determinations regarding witnesses and to resolve any evidentiary conflicts within its discretion, and these

10

credibility determinations are not reviewable on appeal. *Serrano v. Unemployment Comp. Bd. of Rev.*, 149 A.3d 435 (Pa. Cmwlth. 2016). This Court cannot reevaluate the Board's credibility determinations on appeal. *Cambria Cnty. Transit Auth. v. Unemployment Comp. Bd. of Rev.*, 201 A.3d 941, 947 (Pa. Cmwlth. 2019).

Because Claimant did not satisfy her burden of establishing a necessitous and compelling reason for voluntarily quitting her employment, we must affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** President Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Lori Houseknecht, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 268 C.D. 2022 |
| | : | |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

# O R D E R

   **NOW**, April 18, 2023, the Order of the Unemployment Compensation Board of Review, dated March 1, 2022, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge